UNITED STATES of America, Appellee,

v.

**Gary HALBERT, Appellant.**

No. 78–3278.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 4, 1979.

Submitted Jan. 28, 1980.

Decided March 6, 1981.

Rehearing Denied June 2, 1981.

Gerald F. Uelmen, Los Angeles, Cal., for appellant; Harold A. Abeles, Abeles & Markowitz, Beverly Hills, Cal., on brief.

Bert H. Deixler, Asst. U.S. Atty., Los Angeles, Cal., for appellee; Thomas D. Farrell, Asst. U.S. Atty., Los Angeles, Cal., on brief.

Before ELY and POOLE,* Circuit Judges, and HOFFMAN,** District Judge.

PER CURIAM:

Halbert, the appellant, together with co-defendants Bucklan and Culbertson, was indicted on 16 counts of mail fraud charging violations of 18 U.S.C. §§ 1341, 1342, in connection with a scheme to market items commemorating the Nation's Bicentennial. Halbert asserts several claims of error, most of which are without merit. Each of Halbert's claims, and the facts necessary to evaluate them, are considered in the subsections below. His principal claim is that it was prejudicial error to allow the prosecution to introduce evidence that his codefendants had pleaded guilty to the offense

---

* Judge Poole has taken the place of Judge Hufstedler in the disposition of this appeal. Judge Hufstedler, who originally participated, resigned from the Court to accept the position of Secretary of Education. Judge Poole's participation is upon the basis of the written briefs and record on file and his consultation with the remaining judges of the original panel.

** Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

for which Halbert stood trial. We conclude that although the challenged evidence was admissible for certain purposes, the trial court failed to give the jury a sufficiently clear instruction limiting the proper use of such evidence and the judgment must therefore be reversed.

## I.

After initially pleading not guilty, Culbertson changed his plea to guilty on one count of mail fraud and testified against Halbert at trial. Bucklan, who originally pleaded guilty to mail fraud, also testified against Halbert. Both codefendants were asked by the prosecutor, during direct examination, about their guilty pleas to the conspiracy. Over objection, both were allowed to tell the jury that they pleaded guilty to the conspiracy for which Halbert stood trial. The prosecutor reiterated information about Bucklan's plea on redirect examination, made brief reference to both pleas in closing argument, and copies of the plea agreements of both Bucklan and Culbertson were introduced, though neither document was read to the jury. Halbert claims disclosure of the guilty pleas was prejudicial error requiring reversal.

## A.

As a principle of general acceptance, the guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial. *Baker v. United States*, 393 F.2d 604, 614 (9th Cir.) *cert. denied*, 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968). While the evidence may not be used to establish a defendant's guilt, it may properly be considered by the jury in evaluating witness credibility. *See United States v. King*, 505 F.2d 602 (5th Cir. 1974); *Isaac v. United States*, 431 F.2d 11 (9th Cir. 1970). Admissibility of the plea turns on the purpose for which it is offered. When that purpose is to further the jury's difficult task of evalu-

ating credibility, it is relevant and admissible without reference to the identity of the offering party. *See United States v. Whitehead*, 618 F.2d 523, 529 (4th Cir. 1980) (prosecutorial questioning about a codefendant/witness' guilty plea need not be limited to the scope of defendant's stated intended inquiry about the plea); *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976) (preventing prosecutorial questioning on direct about a codefendant's guilty plea creates a false impression with the jury of prosecutorial concealment). This and other circuits have consistently recognized that, under proper instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe. *See, e. g., United States v. Whitehead, supra*, 618 F.2d at 529; *United States v. Romeros*, 600 F.2d 1104, 1105 (5th Cir. 1979) (per curiam); *United States v. Veltre*, 591 F.2d 347, 349 (5th Cir. 1979); *United States v. Anderson, supra*, 532 F.2d at 1230; *United States v. Bryza*, 522 F.2d 414, 424–25 (7th Cir. 1975); *United States v. King, supra*, 505 F.2d at 602; *United States v. Binger*, 469 F.2d 275, 276 (9th Cir. 1972); *Isaac v. United States, supra*, 431 F.2d at 11; *Baker v. United States, supra*, 393 F.2d at 614.[1]

It is manifestly apparent that evidence of the plea is relevant to credibility regardless whether government or defendant initiates inquiry about it. For example, the defense may produce a codefendant as a witness in support of the defendant's case. Then the plea of guilty may be drawn from the witness as an introduction to the testimony exculpating defendant. Here the evidence of credibility is designed to enhance the witness' helpful testimony, as the witness has taken responsibility for an offense which the defendant denies committing.

If the prosecution first calls the codefendant, but does not mention that a guilty plea has been entered, the defense may, and

---

1. The facts of this case require us to consider only the proper use of these pleas as evidence of witness credibility.

often does, bring this fact out on cross examination. It may wish to "expose" the prosecution's implied concealment of the fact that its witness has already pleaded guilty. Or the defense may suggest that the witness, like Judas, is a perfidious erstwhile associate bent upon delivering the defendant into the hands of the prosecution. Or perhaps the defense may dwell on the benefits the witness expects to receive by favorable testimony and upon the motive and need for the witness to make good on his bargain with the prosecution. There are many ways in which the plea may be tactically used by the defense and skilled counsel will take advantage of any or all of them as judgment determines.

■ As a result of plea bargaining, it is often the prosecution which produces a codefendant and elicits testimony tending to show the substantive guilt of the defendant. This is, of course, admissible. As a part of that testimony, the trier of fact should know the witness' total connection to the defendant or to the event; such information may not have been learned from a reading of the indictment or in the opening statements of counsel. Thus, when the prosecution examines the codefendant as its witness in support of its case-in-chief, a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant. The fact a witness has formally admitted personal responsibility enhances the circumstances adding up to that witness' believability.

The prosecutor may also wish to place the plea before the jury so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide. Or, and we engage in no delusions about prosecutorial altruism, the prosecution may simply want the jury to recognize who the witness is, take the testimony as it is, and give a fair evaluation, blemishes and all.

■ Recognizing the legitimate uses that may be made of the guilty plea evidence, we are nonetheless sensitive to the possibility of prejudice, and therefore both trial and reviewing courts have responsibility to insure that evidence of the plea is being offered by the prosecutor and used by the jury only for a permissible purpose. What may facially appear as a legitimate introduction of evidence of a plea becomes something else and on the level of prejudicial error when, for example, the prosecutor suggests in closing argument that the jury use the plea for a prohibited purpose, *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979), when the plea has been used improperly to vouch for the codefendant as a witness, *United States v. Little Boy*, 578 F.2d 211 (8th Cir. 1978), when the use of the plea involves aggravated circumstances known to the trial court, *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970), or when the plea is clearly offered as substantive evidence of guilt. *Baker v. United States, supra*, 393 F.2d at 614. Furthermore, introduction of the guilty plea as evidence of credibility requires that the plea be brought to the jury's attention, but does not sanction allowing the subject to be disproportionately emphasized or repeated.

.

### B.

Applying the principles we have outlined to this case, the issues are two: (1) did the prosecution offer the evidence of the guilty pleas for a permissible purpose such as establishing witness credibility and (2) if the purpose was legitimate, did the trial court's instructions adequately explain to the jury the purpose for which the evidence could be used.

### (1)

■ Reviewing the record here, we find that the prosecutor carefully limited his inquiries about the guilty pleas. On direct examination, questioning did no more than elicit the fact that guilty pleas were entered. No editorial comment or unnecessary elaboration occurred. The brief questioning about the existence of the pleas was clearly relevant as evidence bearing on the witnesses' credibility.

■ The prosecutor was also within his rights on this record in asking Bucklan on redirect again about his guilty plea. On cross examination, defense counsel had elicited numerous statements that Bucklan lacked intent to defraud and that he believed that he would be able to fulfill the promises he and Halbert had made to the customers they allegedly defrauded. On redirect, Bucklan admitted in response to the prosecutor's questions that he was aware that false statements were made to customers and he had pleaded guilty to a crime requiring such knowledge. This questioning was intended to dispel any impression of unwitting misrepresentation and the suggestion that the actions of defendant and the witness were innocent. This was not improper or undue reiteration of the guilty plea.

■ Similarly, reference to the pleas in the prosecution's closing argument was in response to comments by the defense. Defense counsel discussed the guilty pleas in his closing argument, contending that Bucklan and Halbert lacked intent to defraud:

> Now, I think you must consider that statement [Bucklan's lack of intent] in light of the facts, and both Mr. Culbertson and Mr. Bucklan said that, and I think that puts into proper perspective their pleas of guilty to one count and their making a deal, because they got up here and said, when presented by the government, that they hadn't done any wrong, so there are a lot of reasons why people can do things when it is to their advantage.

The prosecutor responded:

> [The defense] has referred to [Bucklan and Culbertson] as the government's star witnesses. Well, I can't say that I'm too happy with that. When you are presenting the evidence of a crime, you have to present the evidence of witnesses who were involved in that crime.
>
> These two men were involved in this crime, they pleaded guilty, and they came here to testify, and you are supposed to determine if they are telling you the truth.

By its terms the prosecutor's closing argument reiterated the pleas only as evidence of credibility and in response to references made by the defense. Such a reiteration is permissible in these circumstances.

■ The prosecutor's purpose in introducing copies of Bucklan's and Culbertson's written plea agreements is less obvious. Nevertheless, the documents were neither read nor emphasized to the jury. As the pleas were before the jury by way of direct testimony, placing them in the written record was not prejudicial.

### (2).

■ While each of the prosecutor's references to the guilty pleas was perfectly permissible, we are nonetheless compelled to reverse Halbert's conviction for want of appropriate instructions to the jury on the limited purpose for which the pleas could be used.

The district court's only instruction on the permissible use of the guilty pleas was given once, in closing instructions to the jury. The judge cautioned:

> disposition of Culbertson and Bucklan . . . should not control or influence you in your verdict with reference to the remaining defendant, Mr. Halbert. You must base your verdict as to him solely on the evidence presented to you in this courtroom.

■ We cannot say that this instruction apprised the jury that it could use the pleas only as evidence of Bucklan's and Culbertson's credibility. Evidence of the guilty pleas is amenable to misuse. Without instruction, it is possible the jury could use the pleas as evidence of Hablert's guilt. This danger may be averted only by adequate cautionary instructions that make it clear to lay people that evidence of a witness' own guilty plea can be used only to assess credibility. *See United States v. Binger, supra,* 469 F.2d at 276. The most effective practice would be to instruct the jury when the evidence of the plea is admitted, and again in final instructions. But at

least they should be told in unequivocal language that the plea may not be considered as evidence of a defendant's guilt. *See United States v. Whitehead, supra,* 618 F.2d at 529–30; *United States v. Bryza, supra,* 522 F.2d at 424–25.

Couched in legal abstrusity, as was done here, we cannot say that a reasonable juror would understand the limited use to be made of the evidence of the pleas. An acceptable instruction must address the purpose for which the evidence may be considered and exclude from the jury's mind the possibility that it may serve as evidence of guilt. Because of the danger of misuse and the substantial lack of clarity in this instruction, we cannot hold that the faulty instruction was harmless error.

## II.

█ The jury was also instructed that: The indictment in this case alleges several false and fraudulent pretenses, representations and promises. It is not essential that the government prove each and every false pretense, representation or promise alleged to have been made, but it is essential that the proof show beyond a reasonable doubt that the defendant made, or caused to be made one or more or a sufficient number of false and fraudulent promises, representations and pretenses alleged to establish the existence of the scheme to defraud charged in the indictment. Reporter's Transcript at 765.

Halbert argues that the misrepresentations relied upon by the prosecution to establish mail fraud must be material, and that failure of the trial judge to so instruct the jury was error. This argument, however, flies in the face of the language of 18 U.S.C. § 1341, which specifies several alternative ways in which the mail fraud offense may be committed, two of which were charged in the indictment:

(1) a scheme or artifice to defraud, and

(2) obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

The activities proscribed by either of these clauses constitute independent grounds for conviction of mail fraud. The instruction, however, does not make this clear, for it seems to require that misrepresentations be found in order to support a conviction under both clauses. A defendant's activities can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved. *United States v. Bohonus,* 628 F.2d 1167 (9th Cir. 1980); *Lustiger v. United States,* 386 F.2d 132, 138 (9th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968); *Lemon v. United States,* 278 F.2d 369, 373 (9th Cir. 1960). It follows that Halbert could have been convicted of mail fraud even if no misrepresentations had been made.

█ The failure to instruct the jury on the requirement of materiality of the misrepresentations, however, raises the possibility that the verdict might have been based on incorrect legal grounds which may require reversal. *Street v. New York,* 394 U.S. 576, 584–88, 89 S.Ct. 1354, 1361–63, 22 L.Ed.2d 572 (1969); *Yates v. United States,* 354 U.S. 298, 311–12, 77 S.Ct. 1064, 1072–73, 1 L.Ed.2d 1356 (1957); *Williams v. North Carolina,* 317 U.S. 287, 292, 63 S.Ct. 207, 210, 87 L.Ed. 279 (1942); *Stromberg v. California,* 283 U.S. 359, 367, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931). If materiality is required under section 1341, it is possible that the jury based their guilty verdict on an erroneous legal ground, i. e., the making of non-material misrepresentations.

The evolution of the federal law of fraud and false pretenses has been toward a requirement of materiality. *Cf. United States v. Valdez,* 594 F.2d 725 (9th Cir. 1979); *United States v. Talkington,* 589 F.2d 415 (9th Cir. 1978) (materiality required for convictions for false statements made to federal officers under 18 U.S.C. § 1001); *United States v. Kostoff,* 585 F.2d 378 (9th Cir. 1978) (materiality required for conviction for statements made in furtherance of bank credit fraud under 18 U.S.C. § 1014); 26 U.S.C. § 7206(1) (materiality required for conviction for false statements made on tax return); 18 U.S.C. § 1621(1) (materiality required for conviction for perjury); 18 U.S.C. § 1623 (materiality re-

quired for conviction for false statements made to grand jury); 18 U.S.C. § 922(a)(6) (materiality required for conviction for false statements made in connection with a firearms purchase).

Such a requirement of materiality should apply to the misrepresentations which form the basis for a mail fraud violation under 18 U.S.C. § 1341. However, in this case, we think the materiality of the misrepresentations was clearly established by the evidence. When that is so, failure to instruct the jury on materiality is not error. *United States v. Valdez*, 594 F.2d at 729; *United States v. Kostoff*, 585 F.2d at 380.

### III.

█ Halbert further appeals his conviction on the grounds that the evidence supporting each of the six misrepresentations charged in the indictment was insufficient to support the jury's verdict. In reviewing a criminal conviction, the evidence must, of course, be viewed in the light most favorable to the prosecution. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Herrera-Medina*, 609 F.2d 376, 380 (9th Cir. 1979). Our review of the record convinces us that the prosecution's evidence as to each of the six acts which formed the basis of the mail fraud charge was sufficient.

### IV.

█ Halbert also argues that his conviction should be reversed because the instruction, above quoted, raises the possibility that the jury could have based its verdict exclusively on a *single* misrepresentation unsupported by sufficient evidence. In view of our conclusion that the evidence supported all six of the misrepresentations, it is not necessary for us to consider this argument. We do so, however, because of appellant's novel interpretation of our decision in *United States v. Outpost Development Co.*, 552 F.2d 868 (9th Cir.), *cert. denied sub nom., Germain v. United States*, 434 U.S. 965, 98 S.Ct. 503, 54 L.Ed.2d 450 (1977). Halbert cites this case correctly for the proposition that a conviction must be

reversed if it is possible that the verdict was based on erroneous grounds (Part II, *supra*). *Outpost*, however, distinguished the issue of the adequacy of *legal* grounds on which the conviction was based from the question of the sufficiency of the evidence to support the verdict. As discussed above, the possibility that the verdict was based on an erroneous legal ground is error, but the possibility that a criminal conviction might have been based on factual allegations unsupported in the record does not necessitate reversal if there is other evidence sufficient to support the conviction. In a mail fraud prosecution, it is clear that the Government need not prove every misrepresentation charged conjunctively in the indictment. *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979); *United States v. Outpost*, 552 F.2d at 869–70; *Lustiger v. United States*, 386 F.2d at 135–36; *Simons v. United States*, 119 F.2d 539, 549 (9th Cir.), *cert. denied*, 314 U.S. 616, 62 S.Ct. 78, 86 L.Ed. 496 (1941). *Cf. United States v. Socony-Vacuum*, 310 U.S. 150, 250, 60 S.Ct. 811, 856, 84 L.Ed. 1129 (1940) (multiple acts supporting conspiracy indictment); *United States v. Weiner*, 578 F.2d 757, 788 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978) (multiple acts supporting indictment for securities fraud); *Vitello v. United States*, 425 F.2d 416, 418–19 (9th Cir.), *cert. denied*, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970) (multiple acts supporting perjury indictment); *United States v. Maxwell*, 588 F.2d 568, 573 (7th Cir. 1978), *cert. denied*, 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979) (multiple acts supporting indictment for theft of government property). Even if the Government had not established one or more of the six acts of misrepresentation involved in this case, sufficient proof of even one of the acts would have been enough to support Halbert's conviction for mail fraud.

### V.

█ Halbert also argues that another essential element of the mail fraud offense is lacking in this case because the mails were not used in connection with ac-

tivities proscribed by the statute. Specifically, he argues that the requisite connexity is lacking because the mailings were made before some of the six acts of misrepresentation charged in the indictment. This contention fundamentally misapprehends the purpose of the mail fraud statute, which is to proscribe use of the mails in any situation where it is closely entwined with fraudulent activity. This connection is not to be measured by a technical standard; rather, what is required is that the mailings somehow contribute to the success of the scheme. *United States v. Kelem*, 416 F.2d 346, 348–50 (9th Cir. 1969), *cert. denied*, 397 U.S. 952, 90 S.Ct. 977, 25 L.Ed.2d 134 (1970). On the facts before us, the mailings were made in furtherance of activities amounting to mail fraud. *United States v. International Term Papers, Inc.*, 477 F.2d 1277, 1279–80 (1st Cir. 1973) (misrepresentations occurring after use of mails completed). *See United States v. Maze*, 414 U.S. 395, 398–405, 94 S.Ct. 645, 647–651, 38 L.Ed.2d 603 (1974); *United States v. Sampson*, 371 U.S. 75, 79–81, 83 S.Ct. 173, 175–76, 9 L.Ed.2d 136 (1962); *Parr v. United States*, 363 U.S. 370, 383–94, 80 S.Ct. 1171, 1179–85, 4 L.Ed.2d 1277 (1960); *Pereira v. United States*, 347 U.S. 1, 7–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954); *Kann v. United States*, 323 U.S. 88, 94–95, 65 S.Ct. 148, 150–51, 89 L.Ed. 88 (1944).

## VI.

 Halbert contends that the use of a false or assumed name cannot be a material misrepresentation without a showing of reliance on the part of a prospective victim. We disagree. A misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose. *United States v. Goldberg*, 455 F.2d 479, 481 (9th Cir.), *cert. denied*, 406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 665 (1972); *Irwin v. United States*, 338 F.2d 770, 773 (9th Cir. 1964), *cert. denied*, 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965); *United States v. Reid*, 533 F.2d 1255, 1263 (D.C. Cir. 1976); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970); *Erwin v. United States*, 242 F.2d 336, 337 (6th Cir. 1957). Though use of a false name in connection with a mailing is usually prosecuted under 18 U.S.C. § 1342, we see no reason why employment of an alias cannot also evidence a fraudulent activity under section 1341 when the facts clearly indicate that the name was used for a fraudulent purpose. *United States v. Pearlstein*, 576 F.2d 531, 535–37 (3d Cir. 1978).

## VII.

 Halbert also argues that he was denied his Sixth Amendment right to represent himself when the trial judge denied his motion to appear as his own attorney in addition to his retained counsel. While effective legal counsel is an essential right found in the Sixth Amendment, and the right to appear *pro se* is guaranteed by 28 U.S.C. § 1654, *Faretta v. California*, 422 U.S. 806, 812–36, 95 S.Ct. 2525, 2529–41, 45 L.Ed.2d 562 (1975), the two rights are disjunctive. A criminal defendant does not have an absolute right to both self-representation *and* the assistance of counsel. *United States v. Klee*, 494 F.2d 394, 396–97 (9th Cir.), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974); *Duke v. United States*, 255 F.2d 721, 725–26 (9th Cir.), *cert. denied*, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365 (1958); *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978); *United States v. Sacco*, 571 F.2d 791, 793 (4th Cir.), *cert. denied*, 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Cyphers*, 556 F.2d 630, 634 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977). Whether to allow hybrid representation remains within the sound discretion of the trial judge. *United States v. Daniels*, 572 F.2d at 540; *United States v. Wilson*, 556 F.2d 1177, 1178 (4th Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 481 (1977); *United States v. Pinkey*, 548 F.2d 305, 310 (10th Cir. 1977); *United States v. Bennett*, 539 F.2d 45, 49 (10th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). Here, the trial judge did not abuse his discretion in

refusing Halbert's motion for self-representation.

## VIII.

██ Halbert contends that it was error of constitutional dimension for his attorney also to represent his co-defendant Culbertson at the arraignment. Our court has, however, repeatedly rejected a *per se* rule requiring reversal of a criminal conviction because of potential conflict of interest deriving from multiple representation of codefendants in criminal trials. *Willis v. United States*, 614 F.2d 1200, 1202 (9th Cir. 1979); *United States v. Eaglin*, 571 F.2d 1069, 1086 (9th Cir. 1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978); *Glavin v. United States*, 396 F.2d 725, 727 (9th Cir.), *cert. denied*, 393 U.S. 926, 89 S.Ct. 258, 21 L.Ed.2d 262 (1968); *Watkins v. Wilson*, 408 F.2d 351, 352 (9th Cir. 1969). Reversal is required only when the defendant meets the burden of showing specific prejudice to his rights by the multiple representation. *Willis v. United States*, 614 F.2d at 1202–04; *United States v. Kutas*, 542 F.2d 527, 529 (9th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); *United States v. Nystrom*, 447 F.2d 1350, 1351 (9th Cir.), *cert. denied*, 404 F.2d 993, 92 S.Ct. 542, 30 L.Ed.2d 545 (1971); *Davidson v. Cupp*, 446 F.2d 642, 643 (9th Cir. 1971).

██ Halbert argues, however, that this rule has been modified by the Supreme Court decision in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), which he contends established a *per se* rule requiring reversal if a potential conflict is implicated. *Holloway* is distinguishable, however, because there the multiple representation was forced on the defendants over the repeated and vigorous protests of counsel who argued that prejudicial conflict of interest was inescapable. Halbert's attorney, in contrast, specifically agreed to represent Culbertson at the arraignment, and codefendant Culbertson added his approval in a direct colloquy with the trial judge. This is not a situation wherein the trial judge "improperly requires joint representation," as contemplated by the *Holloway* rule.

Halbert has not demonstrated actual and substantial prejudice to his rights ensuing from the multiple representation at the arraignment. Because the multiple representation in this case was limited solely to the taking of a plea, there is nothing in the activities of Halbert's counsel at the arraignment which could possibly have resulted in actual conflict between the interests of the codefendants.

REVERSED AND REMANDED.