116 F.3d 486
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Paul GEORGES, Defendant-Appellant.
 No. 96-50143.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1997.
Decided June 17, 1997.
 
 Appeal from the United States District Court for the Central District of California, No. CR 93-00821 TJH; Terry J. Hatter, Jr., District Judge, Presiding.
 Before: BROWNING and SCHROEDER, Circuit Judges, and RESTANI, Judge.*
 
 
 1
 MEMORANDUM**
 
 
 2
 Defendant-appellant Richard Paul Georges ("defendant") appeals his conviction and sentence for one count of conspiracy to commit mail and wire fraud, ten counts of mail fraud, nine counts of wire fraud, and fourteen counts of money laundering stemming from his involvement in a film production company in which he and several co-conspirators misrepresented material information to investors through the use of the phone and mail. We affirm.
 
 I.
 
 3
 Defendant argues that the prosecutor intentionally undermined the trial court's sequester order pursuant to Fed.R. Evid. 615 by informing excluded prosecution witnesses what the witnesses were asked on cross-examination and that the district court abused its discretion in not declaring a mistrial or striking the witness' testimony.
 
 
 4
 Federal Rule of Evidence 615 provides, in pertinent part, that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Fed.R.Evid. 615. This rule serves "to reduce the danger that a witness's testimony will be influenced by hearing the testimony of other witnesses, and to increase the likelihood that the witness's testimony will be based on her own recollections." United States v. Hobbs, 31 F.3d 918, 921 (9th Cir.1994) (citing Perry v. Leeks, 488 U.S. 272, 281-82 (1989)).
 
 
 5
 While the prosecutor told the court that he had informed subsequent witnesses of the "pattern of cross-examination," nothing in the record suggests that the substance of previous witnesses' testimony had been revealed. Indeed, defense counsel made clear, on two separate occasions, that he was not accusing the prosecutor of either suggesting answers to potential cross-examination or disclosing what had previously been testified to by the witnesses. The trial court noted that the prosecutor may have been able to tell a witness about the focus of prior cross-examinations, but certainly could not determine what exactly would be asked. As the prosecutor did not disclose the substance of any prior testimony or suggest how to answer potential lines of cross-examination, the district court was within its discretion in finding that there was no violation of Rule 615.
 
 
 6
 Even if the prosecutor's actions violated the spirit of Rule 615 as defendant claims, the district court did not abuse its discretion by refusing defendant's request for a mistrial. "[T]he Supreme Court has recognized three sanctions for the violation of a sequestration order: (1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying." Hobbs, 31 F.3d at 921 (citing Holder v. United States, 150 U.S. 91, 92 (1893)). Here, the district court permitted cross-examination of the subsequent witness regarding his preparation for testimony. In response to defense counsel's cross-examination, the witness candidly admitted to the jury that he had reviewed documents relating to the investment as a result of being told by the prosecutor that it was likely he was going to be asked about those documents.
 
 
 7
 Accordingly, defense counsel was allowed to probe the fact that the prosecutor had told the witness what type of cross-examination could be expected. Therefore, jurors were made aware of the prosecutor's preparation of the witness when they deliberated. See United States v. Cozzetti, 441 F.2d 344, 350 (9th Cir.1971) (ability to cross-examine witness may cure any violation of the Rule 615). Thus, the court was within its discretion in allowing cross-examination regarding the prosecutor's disclosures to the witness rather than declaring a mistrial or striking the witness' testimony.
 
 II.
 
 8
 When the first co-conspirator testified, defense counsel asked the court to admonish the jurors that they should not consider the fact that the witness had pleaded guilty to conspiracy as evidence of defendant's guilt. The court denied the request and stated that it felt that the instruction would be more appropriately given during the final charge. Defendant renewed his objection for each co-conspirator who testified. During its final charge, the court instructed the jury that the fact that an alleged accomplice may have entered a plea of guilty is not evidence of any other person's guilt. Defendant argues that the court's failure to give the jury this instruction at the time the co-conspirators testified constituted reversible error.
 
 
 9
 We have long held that "if evidence of a coconspirator's guilty plea is admitted, then the jury must be instructed that the plea cannot be considered as evidence of the defendant's guilt." United States v. Harris, 738 F.2d 1068, 1071 (9th Cir.1984); see also United States v. Rewald, 889 F.2d 836, 865 (9th Cir.1989); United States v. Halbert, 640 F.2d 1000, 1006-07 (9th Cir.1981). In Halbert, this court stated that in order to obtain this goal, "[t]he most effective practice would be to instruct the jury when the evidence of the plea is admitted, and again in final instructions." 640 F.2d at 1006. We instructed, however, that "at least they [the jury] should be told in unequivocal language that the plea may not be considered as evidence of a defendant's guilt." Id. at 1007.
 
 
 10
 No authority supports defendant's claim that failure of the trial court to give a contemporaneous instruction constitutes reversible error. Indeed, we have previously found no abuse of discretion when the district court failed to give limiting instructions at the time of the co-conspirators' testimony. Rewald, 889 F.2d at 865. Significantly, we stated that "[w]hile '[t]he most effective practice would be to instruct the jury when the evidence of the plea is admitted, and again in final instructions,' the district court did not abuse its discretion by giving the cautionary instruction only in its final charge to the jury." Id. (quoting Halbert, 640 F.2d at 1006).
 
 
 11
 In this case, there is no question that the ultimate instruction the court issued to the jury was adequate. The court specifically informed the jury that even though an alleged accomplice might have pleaded guilty, the plea may not be considered evidence of a defendant's guilt.
 
 III.
 
 12
 At the close of summations, defense counsel objected to the prosecutor's statement that "[t]he only person who is trying to escape responsibility and put the blame on everyone else is Richard Georges." Defense counsel argued that this statement implied that defendant should be punished because he did not admit to his crimes and plead guilty as did the alleged accomplices. The court denied defendant's motion for a mistrial ruling that the statement was "argument so there is no problem."
 
 
 13
 In determining the propriety of the prosecutor's remark, the comment must be judged in relation to whether it posed a fair response to the arguments of defense counsel. United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.1992). "Thus the import of the evaluation has been that if the prosecutor's remarks were 'invited' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." United States v. Young, 470 U.S. 1, 12-13 (1985).
 
 
 14
 Defense counsel's argument was that the prosecution's witnesses were not worthy of belief and were all trying to blame defendant. The prosecutor's comment that it was defendant who was trying to "escape responsibility and put the blame on everyone else" was a fair response.
 
 IV.
 
 15
 At the start of the defense case, the prosecutor objected to the proposed testimony of Charles Matthau. Specifically, the prosecutor argued that "[i]t would appear from the stipulation that the testimony of this witness would be completely outside the time frame of the conspiracy." In response, defense counsel stated that defendant had a right to demonstrate that he made an ongoing attempt to salvage the business, indicating that there was no intent to defraud the investors. After hearing argument the court ruled that it saw "no real difference between this and the civil side; an attempt by a defendant to rectify an alleged harm after the fact. That wouldn't be allowed." Accordingly, the court did not allow Matthau to testify.
 
 
 16
 Similarly, during Georges' testimony, he was asked "[W]hy did it [the production company] close in April of 1992?" The prosecutor objected stating that the question asked about events "[b]eyond the time scope of the indictment." The court sustained the objection and did not allow Georges to answer defense counsel's question.[1] Defendant argues that the court's refusal to allow evidence as to the status of the production company after the date of the conspiracy constituted reversible error.[2]
 
 
 17
 Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. We have stated that in fraud prosecutions a defendant should be "permitted to develop fully and fairly all of the evidence that would tend to exonerate him." United States v. Thomas, 32 F.3d 418, 421 (9th Cir.1994). In this case, however, it cannot be said that the district court abused its discretion by excluding evidence of what happened after the dates of the conspiracy and fraud.
 
 
 18
 A conspiracy is complete after a defendant enters an agreement to accomplish the illegal objective, commits an overt act in furtherance of the conspiracy, and has the requisite intent to commit the underlying offense. See United States v. Matta-Ballesteros, 71 F.3d 754, 765 (9th Cir.1995), cert. denied, 117 S.Ct. 965 (1997). Similarly, the crime of fraud is complete upon a showing of a material misrepresentation by the defendant regardless of whether there was a good faith intent to repay or belief that no losses would be sustained by the victims. United States v. Benny, 786 F.2d 1410, 1417 (9th Cir.1986). Even assuming that defendant was attempting to save the company after he learned of the criminal investigation, such evidence has no bearing upon whether he intended to defraud the investors at the time he established the company or published misrepresentations. Defendant's actions after learning of the criminal investigation do not tend to make the existence of his criminal intent at the time of the conspiracy any more or less probable.
 
 
 19
 Furthermore, during the trial, defendant was able to offer evidence that investors were given the opportunity to rescind their investments, defendant reorganized his business, defendant followed proper business procedures, efforts were undertaken to complete the movies and market them, and defendant attempted to receive payment from SGE for investors. Also, defense counsel was able to argue to the jury that defendant didn't flee when he learned of the investigation and attempted to continue the business. Accordingly, even if the evidence could be considered relevant, it was cumulative, and its exclusion would not constitute reversible error.
 
 V.
 
 20
 Defendant sets forth three challenges to the calculation of his sentence. He argues that his offense level was enhanced for acts which he was not charged, and that fraud guidelines, should have been used to calculate his sentence. Finally, defendant objects, for the first time in his reply-brief, to the order requiring him to pay restitution.
 
 
 21
 In defendant's pre-sentence report, the probation officer stated:
 
 
 22
 Pursuant to Guideline Section 2S1.1(b)(2)(D), the offense level is increased by three if the value of the money laundered was between $350,000 and $600,000. In this case, the defendant laundered $565,000 worth of proceeds from the wire and mail fraud scheme.
 
 
 23
 Pre-Sentence Report at 30. Defense counsel argued that the amount of money that was "pled and proven should be the amount that the Court uses for the guideline which would result in a three-level reduction." Conceding that his sentence does not depend on the evidence adduced at trial, defendant maintains that sentencing depends on the indictment and the convictions. As counts 41-54 in the indictment (the specific money laundering charges) add up to a total of $41,892.24, defendant contends the increased offense level was improper.
 
 
 24
 Defendant's argument is legally incorrect. The theory that defendants cannot be sentenced for crimes of which they are not convicted has been rejected by the United States Supreme Court. Indeed, in holding that a sentencing court may consider conduct for which a defendant has been acquitted when determining the proper range of sentence, the Supreme Court also reaffirmed the principle that the Sentencing Guidelines allow the use of uncharged acts. United States v. Watts, 117 S.Ct. 633, 636 (1997). In this case, postal inspector Kolisar testified that the conspiracy obtained approximately $2.8 million of which $280,000 was given to defendant, $182,000 went to Little, $61,000 was spent on automobiles, and $292,000 was spend to miscellaneous charges. Thus, there was sufficient evidence for the court to adjust the guidelines to include the $350,000 laundered by defendant.
 
 
 25
 Defendant also asserts that the trial court improperly sentenced defendant under the money laundering guidelines rather than the fraud guidelines. Defense counsel argues that as the money laundering charge stems from his handling of the ongoing affairs of the business, the incidental financial transaction should not allow him to be punished more severely than he would have been under the guidelines related to fraud.
 
 
 26
 Defendant was convicted of several offenses arising out of a common criminal objective. The Sentencing Guidelines require that:
 
 
 27
 All of counts involving substantially the same harm be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: When counts involve the same victim or two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
 
 
 28
 United States Sentencing Commission, Guidelines Manual ("USSG"), § 3D1.2(b) (Nov.1995). When counts are grouped, the sentencing court uses the highest offense level of the counts to sentence defendant. USSG § 3D1.3(a). Of the crimes of which defendant was convicted, money laundering has the highest offense level. In United States v. Rose, 20 F.3d 367, 374-75 (9th Cir.1994), the defendant, making the same claims as are made here, argued that it was unfair that he was more harshly punished under the money laundering provisions of the guidelines as opposed to the fraud guidelines. We found that the intentional disparity in sentencing was to "provide for 'substantial punishment' for 'defendants who encouraged or facilitated the commission of further crimes.' " Id. at 375 (quoting USSG § 2S1.1, cmt.). In this case, defendant used the fraudulently obtained money in order to continue his fraud. Accordingly, the district court properly applied the money laundering guidelines.
 
 
 29
 Lastly, defendant argues that he should not have to pay restitution to his victims. This claim was not raised in defendant's opening brief, but only in his reply brief. Specifically defendant maintains that the court made no findings with respect to defendant's ability to pay in the future.
 
 
 30
 We "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992) (quoting Miller v. Fairchild Industries. Inc., 797 F.2d 727, 738 (9th Cir.1986)). No reason is offered explaining the lack of specific objection at the time the sentence was imposed or why the issue was not raised in defendant's opening brief. Thus, no circumstances exist in this case which warrant consideration of the issue. In any event, the trial court's consideration of the pre-sentence report, which contained information regarding defendant's ability to pay, constitutes a sufficient exercise of discretion.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendant also maintains that he had additional witnesses and exhibits demonstrating his efforts to save the production company. At trial, however, defendant never indicated to the court that there were additional witnesses or exhibits he wished to introduce. Indeed, defendant, even now, does not identify additional witnesses or specific exhibits he sought to be introduced. Accordingly, defendant's failure to indicate that he had additional exhibits or witnesses beyond Matthau, precludes this court from overturning the district court on the basis of vague evidence presented for the first time in defendant's brief. See Fed.R.Evid. 103(a)(2); United States v. Morlan, 756 F.2d 1442, 1447 (9th Cir.1985)
 
 
 [2]
 Defendant hints that the reason the court did not allow the evidence was because it was concerned about the length of the trial. Despite this implication, defendant can point to nothing in the record directly supporting this assertion. Moreover, the court gave an evidentiary basis for denying defendant's offers of evidence. Indeed, the court made clear on several occasions that time constraints had nothing to do with its rulings. Therefore, any suggestion that the court limited defendant's case due to time constraints is without merit