Samy A. **MANKARIOUS** and Thomas K. Murphy, Petitioners–Appellants,

v.

**UNITED STATES of America,** Respondent–Appellee.

No. 01–2227.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 2002.

Decided March 11, 2002.

Thomas E. Brown (argued), Kathryn A. Keppel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for petitioners–appellants.

Erica N. O'Neil (argued), Office of the U.S. Attorney, Milwaukee, WI, for respondent–appellee.

Before MANION, ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Over 3 years ago, on direct appeal, we affirmed the convictions of Samy Mankarious and Thomas Murphy on charges of money laundering, wire fraud, and filing false tax returns. *See United States v. Mankarious*, 151 F.3d 694 (7th Cir.1998). They now make a return visit to us, this time challenging the denial of their motion for collateral relief under 28 U.S.C. § 2255. We assume familiarity with the facts and only repeat what we think is necessary to resolve the present appeal.

Mankarious and Murphy's first argument is that they are entitled to reversal or a new trial because the district court did not instruct the jury on "materiality" with regard to the wire fraud charges on which they were convicted. They base this argument on *Neder v. United States*, 527 U.S. 1, 4, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), where the Supreme Court held that materiality is an element of the federal mail, wire, and bank fraud statutes and that the issue must be submitted to the jury.[1] In denying the present § 2255 motion, the district court recognized that *Neder* requires that the issue of materiality be considered by the jury but concluded that the failure to do so in this case was harmless under *Jenkins v. Nelson*, 157 F.3d 485, 496 (7th Cir.1998).

1. The trial judge in *Neder* had told the jury that the issue of materiality "is not a question for the jury to decide."

■ *Neder* was decided in 1999, after Mankarious and Murphy's direct appeal was resolved, and this presents a huge problem for them under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Teague* holds that, unless it falls within an exception, a new constitutional rule of criminal procedure is not applicable to cases that are final when the new rule is announced. *See Teague,* 489 U.S. at 310, 109 S.Ct. 1060. The *Teague* rule is important, for it serves the interest of finality, a goal that would be frustrated if older cases like this one could be resuscitated every time a new decision is announced that calls into question modes of operation accepted in the past as appropriate procedure. For this reason, since *Teague,* "few constitutional arguments apply retroactively on collateral attack." *United States v. Smith,* 241 F.3d 546, 549 (7th Cir.2001).

■ There are two exceptions under *Teague,* and they apply to (1) new rules that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, and (2) rules that define procedures implicit in the concept of ordered liberty. *See id.* at 311, 109 S.Ct. 1060.

■ To get around *Teague,* Mankarious and Murphy argue[2] that *Neder*'s holding that materiality is an element of fraud offenses announced a change in substantive law, not a new rule of criminal procedure. But we held before Neder that materiality was an element of wire fraud in *United States v. Coffman,* 94 F.3d 330, 335 (7th Cir.1996). Therefore, the only change *Neder* precipitated in our circuit was requiring that a separate instruction on materiality be given to juries. This is a change in procedure, not in substantive law. For this reason, and because *Neder*

does not fall within an exception to the *Teague* rule, *Neder* is not available to Mankarious and Murphy on this collateral review.

■ But is snuffing out Mankarious and Murphy's claim on *Teague* grounds cricket? That's a fair question. We answer it with a resounding yes, for even if *Teague* did not bar application of *Neder* to their § 2255 motion, Mankarious and Murphy are still barred from raising their lack of a materiality instruction argument for the first time on collateral review. An issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for and actual prejudice resulting from the failure to raise it. *See Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir.1996).

■ Mankarious and Murphy argue that they can demonstrate cause because the law in this circuit prior to *Neder* rejected the requirement of a materiality instruction. But the fact that an argument was unacceptable at a particular time does not constitute cause for failing to raise it. *See Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The possibility of a separate materiality instruction in fraud cases was not a new issue when this case went to trial. The defendants in *Coffman,* decided 2 years before Mankarious and Murphy's direct appeal, argued (although unsuccessfully) that the lack of a materiality instruction required reversal of their wire fraud convictions. *See Coffman,* 94 F.3d at 335. Additionally, we noted in *Coffman* that the Ninth Circuit addressed the subject of a separate materiality instruction in mail fraud cases in 1981, 15 years before Mankarious and Murphy's trial. *See Coffman,*

---

**2.** Mankarious and Murphy also argue that the government waived reliance on *Teague* by not raising it in the district court. We reject that contention. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

94 F.3d at 335 (citing *United States v. Halbert,* 640 F.2d 1000, 1007–08 (9th Cir. 1981)).

■ Even assuming, as the district court did, that Mankarious and Murphy demonstrated cause for their failure to raise the materiality instruction issue on direct appeal, they cannot demonstrate prejudice. Prejudice exists where an error has a substantial and injurious effect or influence in determining a jury's verdict. *See Jenkins,* 157 F.3d at 496. On collateral review, we reverse only if we are in grave doubt as to the harmlessness of the error. *See id.* at 494.

Here, the government presented substantial evidence that Mankarious and Murphy orchestrated and participated in the wire fraud schemes. For example, one of the government's witnesses was Ed Brown, partial owner of UPEC & Associates. Brown testified that Mankarious outlined a plan for Brown to bilk money out of Delta, the aluminum smelting company that Mankarious and Murphy partially owned. (The remaining 41 percent of Delta was owned by WITECH, a venture capital operation run by Wisconsin Energy Corp., Wisconsin's largest utility.) Brown shared a cut of the proceeds of this scheme with Mankarious and Murphy. Under the scheme, UPEC performed work at Delta, with Brown submitting false invoices for each job. Mankarious and Murphy then cut checks to cover these invoices, sometimes making the checks out to fictitious payees. Brown endorsed the checks and returned them to Mankarious, who cashed them at a tavern. This scheme was only the first in a series of schemes that Mankarious, Murphy, and Brown cooked up together. Therefore, substantial evidence of Mankarious and Murphy's participation in the fraud scheme existed so that the absence of a separate materiality instruction could not have had a substantial and injurious effect in determining the jury's verdict.

■ Mankarious and Murphy also argue that the lack of a materiality instruction requires reversal under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* held that, other than a prior conviction, any fact that increases the penalty for a crime beyond its statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *See id.* at 490, 120 S.Ct. 2348. We have noted on more than one occasion that when the defendant is sentenced to a term of imprisonment within the statutory maximum, *Apprendi* is beside the point. *See United States v. Williams,* 238 F.3d 871, 877 (7th Cir.2001); *Talbott v. Indiana,* 226 F.3d 866, 869 (7th Cir.2000). Here, Mankarious and Murphy were sentenced to 60 months on the wire fraud convictions, which coincides exactly with the maximum authorized term of imprisonment for the offenses. *See* 18 U.S.C. § 1343.

■ Mankarious and Murphy next argue that they are entitled to a hearing to explore whether any government witnesses received improper inducements for their trial testimony. In support of this argument, they rely on *United States v. Condon,* 170 F.3d 687, 689 (7th Cir.1999), where we held that 18 U.S.C. § 201(c)(2) does not bar testimony from a witness who was promised immunity because such a promise is not a "thing of value" within the meaning of the statute. Mankarious and Murphy argue that *Condon* expanded the definition of "thing of value" because it noted that "cancellation of a private debt could be a 'thing of value' in the statutory sense...." *Id.* at 689. This language did not expand the definition of "thing of value." In addition to being dicta, the quoted language states a principle that was as obvious at the time of Mankarious and

Murphy's trial as it is now. Mankarious and Murphy had ample opportunity to cross-examine the government's witnesses at trial (and did so with experienced counsel) about what sort of inducements they may have received to testify and whether these inducements were lawful. Therefore, they are not entitled to a hearing.

Finally, Mankarious and Murphy argue that they have new evidence which entitles them to a new trial. The evidence is described in an affidavit from Norm Lo Presto, an indicted coconspirator. After they filed their § 2255 motion, Mankarious and Murphy learned that Lo Presto had resolved his case and was willing to execute an affidavit outlining his knowledge of the activities of Roger Green. Green ran a Ponzi scheme through Metal Brokers International (MBI), which Mankarious and Murphy discovered when Delta began selling metal through MBI. When they discovered the scheme, Green offered to pay them off, but Mankarious instead suggested that they pursue "business opportunities" together. Green testified against Mankarious and Murphy, alleging the existence of an accounts receivable scheme. Mankarious and Murphy argue that Lo Presto's affidavit demonstrates that this scheme did not exist.

The parties disagree on the proper mechanism for presenting this claim of newly discovered evidence. The government argues that Mankarious and Murphy were required to bring the claim under Rule 33 of the Federal Rules of Criminal Procedure. Mankarious and Murphy argue that they can press the claim as part of their motion under § 2255.

■ Under Federal Rule of Criminal Procedure 33, a district court may grant a new trial on the basis of newly discovered evidence within 3 years of the verdict or finding of guilt. Here, the 3–year limit expired 3 months before Mankarious and Murphy filed their § 2255 motion, and defendants, as we know, may not use § 2255 to circumvent Rule 33's time limit. *See Guinan v. United States,* 6 F.3d 468, 470 (7th Cir.1993).

■ But because a section of § 2255—enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA)—in some very limited cases allows a defendant to file a second or successive motion based on newly discovered evidence demonstrating actual innocence, Mankarious and Murphy say they may bring their claim as part of their present motion.[3] But to be raised here, the claim must still meet certain requirements outlined in the opening paragraph of § 2255. The petitioner must allege either that the challenged sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.

■ Mankarious and Murphy do not allege that the district court was without jurisdiction to impose their sentence, nor that the sentence was in excess of the authorized maximum. They do make a passing reference to due process and suggest that § 2255 makes newly discovered evidence a basis for which a sentence is "otherwise subject to collateral attack." But a conviction does not violate the Constitution nor become otherwise subject to collateral attack merely because newly discovered evidence may be helpful to a defendant. *See United States v. Evans,* 224 F.3d 670, 674 (7th Cir.2000). Thus, Mankarious and Murphy's claim of newly discovered evidence, untimely under Rule 33,

---

**3.** Even generously construed, Lo Presto's new tune does not sing a song of actual innocence.

does not meet the requirements of § 2255 and may not, therefore, be considered.

AFFIRMED.