In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2227

SAMY A. MANKARIOUS and THOMAS K. MURPHY,

Petitioners-Appellants,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
Nos. 99-C-1450 & 95-Cr-96--Rudolph T. Randa, Judge.

Argued January 7, 2002--Decided March 11, 2002


   Before MANION, ROVNER, and EVANS, Circuit
Judges.

   EVANS, Circuit Judge.  Over 3 years ago,
on direct appeal, we affirmed the
convictions of Samy Mankarious and Thomas
Murphy on charges of money laundering,
wire fraud, and filing false tax returns.
See United States v. Mankarious, 151 F.3d
694 (7th Cir. 1998). They now make a
return visit to us, this time challenging
the denial of their motion for collateral
relief under 28 U.S.C. sec. 2255. We
assume familiarity with the facts and
only repeat what we think is necessary to
resolve the present appeal.

   Mankarious and Murphy's first argument
is that they are entitled to reversal or
a new trial because the district court
did not instruct the jury on
"materiality" with regard to the wire
fraud charges on which they were
convicted. They base this argument on
Neder v. United States, 527 U.S. 1, 4
(1999), where the Supreme Court held that
materiality is an element of the federal
mail, wire, and bank fraud statutes and
that the issue must be submitted to the
jury./1 In denying the present sec.
2255 motion, the district court
recognized that Neder requires that the
issue of materiality be considered by the
jury but concluded that the failure to do
so in this case was harmless under

Jenkins v. Nelson, 157 F.3d 485, 496 (7th Cir. 1998).

Neder was decided in 1999, after Mankarious and Murphy's direct appeal was resolved, and this presents a huge problem for them under Teague v. Lane, 489 U.S. 288 (1989). Teague holds that, unless it falls within an exception, a new constitutional rule of criminal procedure is not applicable to cases that are final when the new rule is announced. See Teague, 489 U.S. at 310. The Teague rule is important, for it serves the interest of finality, a goal that would be frustrated if older cases like this one could be resuscitated every time a new decision is announced that calls into question modes of operation accepted in the past as appropriate procedure. For this reason, since Teague, "few constitutional arguments apply retroactively on collateral attack." United States v. Smith, 241 F.3d 546, 549 (7th Cir. 2001).

There are two exceptions under Teague, and they apply to (1) new rules that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, and (2) rules that define procedures implicit in the concept of ordered liberty. See id. at 311.

To get around Teague, Mankarious and Murphy argue/2 that Neder's holding that materiality is an element of fraud offenses announced a change in substantive law, not a new rule of criminal procedure. But we held before Neder that materiality was an element of wire fraud in United States v. Coffman, 94 F.3d 330, 335 (7th Cir. 1996). Therefore, the only change Neder precipitated in our circuit was requiring that a separate instruction on materiality be given to juries. This is a change in procedure, not in substantive law. For this reason, and because Neder does not fall within an exception to the Teague rule, Neder is not available to Mankarious and Murphy on this collateral review.

But is snuffing out Mankarious and Murphy's claim on Teague grounds cricket? That's a fair question. We answer it with a resounding yes, for even if Teague did not bar application of Neder to their

sec. 2255 motion, Mankarious and Murphy are still barred from raising their lack of a materiality instruction argument for the first time on collateral review. An issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for and actual prejudice resulting from the failure to raise it. See Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996).

Mankarious and Murphy argue that they can demonstrate cause because the law in this circuit prior to Neder rejected the requirement of a materiality instruction. But the fact that an argument was unacceptable at a particular time does not constitute cause for failing to raise it. See Bousley v. United States, 523 U.S. 614, 623 (1998). The possibility of a separate materiality instruction in fraud cases was not a new issue when this case went to trial. The defendants in Coffman, decided 2 years before Mankarious and Murphy's direct appeal, argued (although unsuccessfully) that the lack of a materiality instruction required reversal of their wire fraud convictions. See Coffman, 94 F.3d at 335. Additionally, we noted in Coffman that the Ninth Circuit addressed the subject of a separate materiality instruction in mail fraud cases in 1981, 15 years before Mankarious and Murphy's trial. See Coffman, 94 F.3d at 335 (citing United States v. Halbert, 640 F.2d 1000, 1007–08 (9th Cir. 1981)).

Even assuming, as the district court did, that Mankarious and Murphy demonstrated cause for their failure to raise the materiality instruction issue on direct appeal, they cannot demonstrate prejudice. Prejudice exists where an error has a substantial and injurious effect or influence in determining a jury's verdict. See Jenkins, 157 F.3d at 496. On collateral review, we reverse only if we are in grave doubt as to the harmlessness of the error. See id. at 494.

Here, the government presented substantial evidence that Mankarious and Murphy orchestrated and participated in the wire fraud schemes. For example, one of the government's witnesses was Ed Brown, partial owner of UPEC & Associates. Brown testified that Mankarious outlined a plan for Brown to

bilk money out of Delta, the aluminum smelting company that Mankarious and Murphy partially owned. (The remaining 41 percent of Delta was owned by WITECH, a venture capital operation run by Wisconsin Energy Corp., Wisconsin's largest utility.) Brown shared a cut of the proceeds of this scheme with Mankarious and Murphy. Under the scheme, UPEC performed work at Delta, with Brown submitting false invoices for each job. Mankarious and Murphy then cut checks to cover these invoices, sometimes making the checks out to fictitious payees. Brown endorsed the checks and returned them to Mankarious, who cashed them at a tavern. This scheme was only the first in a series of schemes that Mankarious, Murphy, and Brown cooked up together. Therefore, substantial evidence of Mankarious and Murphy's participation in the fraud scheme existed so that the absence of a separate materiality instruction could not have had a substantial and injurious effect in determining the jury's verdict.

Mankarious and Murphy also argue that the lack of a materiality instruction requires reversal under Apprendi v. New Jersey, 530 U.S. 466 (2000). Apprendi held that, other than a prior conviction, any fact that increases the penalty for a crime beyond its statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. See id. at 490. We have noted on more than one occasion that when the defendant is sentenced to a term of imprisonment within the statutory maximum, Apprendi is beside the point. See United States v. Williams, 238 F.3d 871, 877 (7th Cir. 2001); Talbott v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000). Here, Mankarious and Murphy were sentenced to 60 months on the wire fraud convictions, which coincides exactly with the maximum authorized term of imprisonment for the offenses. See 18 U.S.C. sec. 1343.

Mankarious and Murphy next argue that they are entitled to a hearing to explore whether any government witnesses received improper inducements for their trial testimony. In support of this argument, they rely on United States v. Condon, 170 F.3d 687, 689 (7th Cir. 1999), where we held that 18 U.S.C. sec. 201(c)(2) does not bar testimony from a witness who was promised immunity because such a promise

is not a "thing of value" within the meaning of the statute. Mankarious and Murphy argue that Condon expanded the definition of "thing of value" because it noted that "cancellation of a private debt could be a 'thing of value' in the statutory sense . . . ." Id. at 689. This language did not expand the definition of "thing of value." In addition to being dicta, the quoted language states a principle that was as obvious at the time of Mankarious and Murphy's trial as it is now. Mankarious and Murphy had ample opportunity to cross-examine the government's witnesses at trial (and did so with experienced counsel) about what sort of inducements they may have received to testify and whether these inducements were lawful. Therefore, they are not entitled to a hearing.

Finally, Mankarious and Murphy argue that they have new evidence which entitles them to a new trial. The evidence is described in an affidavit from Norm Lo Presto, an indicted coconspirator. After they filed their sec. 2255 motion, Mankarious and Murphy learned that Lo Presto had resolved his case and was willing to execute an affidavit outlining his knowledge of the activities of Roger Green. Green ran a Ponzi scheme through Metal Brokers International (MBI), which Mankarious and Murphy discovered when Delta began selling metal through MBI. When they dis covered the scheme, Green offered to pay them off, but Mankarious instead suggested that they pursue "business opportunities" together. Green testified against Mankarious and Murphy, alleging the existence of an accounts receivable scheme. Mankarious and Murphy argue that Lo Presto's affidavit demonstrates that this scheme did not exist.

The parties disagree on the proper mechanism for presenting this claim of newly discovered evidence. The government argues that Mankarious and Murphy were required to bring the claim under Rule 33 of the Federal Rules of Criminal Procedure. Mankarious and Murphy argue that they can press the claim as part of their motion under sec. 2255.

Under Federal Rule of Criminal Procedure 33, a district court may grant a new trial on the basis of newly discovered evidence within 3 years of the verdict or

finding of guilt. Here, the 3-year limit expired 3 months before Mankarious and Murphy filed their sec. 2255 motion, and defendants, as we know, may not use sec. 2255 to circumvent Rule 33's time limit. See Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993).

But because a section of sec. 2255-- enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA)-- in some very limited cases allows a defendant to file a second or successive motion based on newly discovered evidence demonstrating actual innocence, Mankarious and Murphy say they may bring their claim as part of their present motion./3 But to be raised here, the claim must still meet certain requirements outlined in the opening paragraph of sec. 2255. The petitioner must allege either that the challenged sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack.

Mankarious and Murphy do not allege that the district court was without jurisdiction to impose their sentence, nor that the sentence was in excess of the authorized maximum. They do make a passing reference to due process and suggest that sec. 2255 makes newly discovered evidence a basis for which a sentence is "otherwise subject to collateral attack." But a conviction does not violate the Constitution nor become otherwise subject to collateral attack merely because newly discovered evidence may be helpful to a defendant. See United States v. Evans, 224 F.3d 670, 674 (7th Cir. 2000). Thus, Mankarious and Murphy's claim of newly discovered evidence, untimely under Rule 33, does not meet the requirements of sec. 2255 and may not, therefore, be considered.

AFFIRMED.

FOOTNOTES

/1 The trial judge in Neder had told the jury that the issue of materiality "is not a question for the jury to decide."

/2 Mankarious and Murphy also argue that the govern-
ment waived reliance on Teague by not raising it
in the district court. We reject that contention.
See Singleton v. Wulff, 428 U.S. 106, 121 (1976).

/3 Even generously construed, Lo Presto's new tune
does not sing a song of actual innocence.