William CASTRO Movant,

v.

UNITED STATES of America, Respondent.

No. 98–324–CIV.
No. 91–708–CR.

United States District Court, S.D. Florida.

Feb. 28, 2003.

Lawrence Lavecchio, Asst. U.S. Atty., Fort Lauderdale, FL, for Plaintiffs.

Maria del Carmen Jimenez, Esq., Miami, FL, for Defendants.

## ORDER

GONZALEZ, District Judge.

**THIS MATTER** has come before the Court upon the third and fourth amended motions (DE # 24, 47)—filed August 8, 1998 and September 7, 1999, respectively—to vacate, set aside, or correct the conviction and sentence, pursuant to 28 U.S.C. § 2255, of Movant William Castro ("Movant").[1] The Court referred this matter to the Magistrate, and the Magistrate issued two Reports and Recommendations (DE # 41, 58), on December 23, 1998 and March 23, 2000, respectively (collectively, the "R and R"), recommending that the Motion be denied.

For the reasons stated herein, after a *de novo* review of the record in this case, the Court adopts the Magistrate's recommendation; the Court therefore **ORDERS** and **ADJUDGES** that the Motion is **DENIED**.

### I. Background.

Movant is one of nine co-defendants convicted as a result of "Operation Court Broom." The facts of Operation Court Broom have been well recounted in several published Eleventh Circuit opinions[2], so

---

1. The Court will refer to the third and fourth amended motions collectively as the "Motion"; the Court will refer and cite to Movant's memoranda of law (DE # 25, 48) in support of the third and fourth amended motions as "Movant's Mem. I" and "Movant's Mem. II", respectively.

2. *See, e.g., United States v. Castro,* 89 F.3d 1443 (11th Cir.1996), *cert. denied sub nom., Luongo v. United States,* 519 U.S. 1118, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997); *United States v. Shenberg,* 89 F.3d 1461 (11th Cir. 1996), *cert. denied sub nom., Luongo v. United States,* 519 U.S. 1118, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997); *United States v. Massey,* 89 F.3d 1433 (11th Cir.1996), *cert. denied, Massey v. United States,* 519 U.S. 1127, 117 S.Ct. 983, 136 L.Ed.2d 865 (1997).

only those facts essential to the Court's ruling on the instant Motion will be recounted here.

Operation Court Broom was an investigation, undertaken by federal and state law enforcement officials, into corrupt activities occurring in Dade County Florida Circuit Court, roughly between August 1989 and June 1991. In Metropolitan Dade County ("Metro Dade"), circuit court judges were empowered both to appoint criminal defense attorneys as special assistant public defenders ("SAPDs") and to approve and authorize the compensation that Metro Dade paid to the attorneys so appointed. Circuit court judges would appoint SAPDs to represent indigent defendants.

Roy T. Gelber, Alfonso C. Sepe, Harvey N. Shenberg, and Philip S. Davis were circuit court judges for the Eleventh Judicial Circuit in Metro Dade during the relevant time period. Among other unlawful activities, these judges approached various criminal defense lawyers practicing in the Eleventh Judicial Circuit and offered to appoint, or to have one of their colleagues appoint, the attorneys as SAPDs in exchange for kickbacks. Gelber approached and made such an offer to Movant—who was, by all accounts, a talented, young, criminal defense attorney at the time. The two agreed that Gelber would appoint Movant as SAPD to cases and, within a few days of the appointment, Movant would pay Gelber a sum approximating twenty percent of the attorney fees Movant could anticipate earning from Metro Dade for the representation. Between October 1989 and June 1991, Gelber appointed Movant to some sixty-four cases, for which Metro Dade, upon Gelber's authorization, paid Movant approximately $77,000. Movant paid Gelber approximately $10,000 to $12,000. Movant also recruited another lawyer, Kent Wheeler, to accept SAPD appointments from Gelber in exchange for kickbacks. Gelber appointed Wheeler to thirty-seven cases during the same period, for which Metro Dade paid Wheeler roughly $34,000.

In Operation Court Broom, the government built its case using an attorney who agreed to work undercover, presenting himself to Gelber and the other suspect judges as a corrupt lawyer representing clients in organized crime. The government's undercover agent wore a recording device and taped conversations between himself and Gelber, as well as the other judges, engaging in the kickback scheme and other illegal conduct. Gelber ultimately pleaded guilty to violating 18 U.S.C. § 1962(d), that is, conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act or "RICO", and testified at trial for the government as an unindicted co-conspirator.

Movant and eight co-defendants—three judges and five lawyers—were charged in a 106–count indictment, alleging various racketeering, extortion, mail fraud, money laundering, and bribery offenses. Movant was specifically charged with the following: in count 1, a violation of 18 U.S.C. § 1962(d) (RICO Conspiracy); in counts 6–32, violations of 18 U.S.C. §§ 1341, 1346 and 2 (honest services mail fraud); and in count 81, violations of 18 U.S.C. § 666(a)(2) (bribery concerning programs receiving federal funds). At the commencement of trial, the government dismissed count 6. The jury ultimately convicted Movant and his co-defendants on all remaining counts. Movant was sentenced to thirty-seven months of imprisonment, three years of supervised release, and a forfeiture of $77,204.00, reflecting the amount of attorney fees Movant was paid by Metro Dade as a result of the kickback scheme.

Movant and his co-defendants filed direct appeals. The issues raised by Mov-

ant, *et al.,* in his direct appeal and addressed by the Eleventh Circuit were the following:

(1) whether a material variance or misjoinder occurred; (2) whether sufficient evidence existed to establish that appellants conspired to participate in a RICO enterprise; (3) whether the district court's instructions and the prosecutor's summations constructively amended the indictment; (4) whether appellants were properly convicted of bribery under 18 U.S.C. § 666(a)(2); (5) whether appellants were properly convicted for mail fraud under 18 U.S.C. §§ 1341, 1346; (6) whether prosecutorial misconduct occurred through impermissible vouching for witness's credibility and through improper remarks; and (7) whether district court abused its discretion in excluding appellant's proffered evidence.

*United States v. Castro,* 89 F.3d 1443, 1449–50 (11th Cir.1996), *cert. denied sub nom., Luongo v. United States,* 519 U.S. 1118, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997). The Court of Appeals rejected all of the appellants' arguments and affirmed Movant's and his co-defendants' convictions and sentences.

## II. Procedural History and Standard of Review.

In the Motion, Movant advances in total thirteen separate grounds for error, *i.e.,* claims for relief. The Magistrate variously found Movant's arguments to be procedurally barred or substantively without merit and, therefore, recommended that the Motion be denied. Movant timely filed extensive objections to the Magistrate's R & R, objecting to the Magistrate's recommendations as to each ground for relief advanced in the Motion.

Title 28, section 636, provides that district courts "shall make a *de novo* determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); *Diaz v. United States,* 930

F.2d 832, 836 (11th Cir.1991). The Eleventh Circuit has stated that, "[a]s the use of the phrase *de novo* implies, the district court's consideration of the factual issue must be independent and based upon the record before the court." *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

## III. Law and Analysis.

 The Court has conducted an extensive *de novo* review of the record in this case. As a preliminary matter, the Court notes certain general rules applicable in § 2255 proceedings following direct appeals. "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *Mills v. U.S.,* 36 F.3d 1052, 1055 (11th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995). A ground for error is usually "available" on direct appeal when its merits can be evaluated without further development of the factual record of the case. *Id.* When a defendant fails to pursue a particular available claim on direct appeal, a court considering the defendant's subsequent § 2255 motion will not consider such a claim unless the defendant can establish "cause" for the default and "actual prejudice" resulting from the alleged error underlying the claim. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir.2001) (citing *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)), *cert. denied,* 122 S.Ct. 2362 (2002). Further, a § 2255 movant cannot argue as the causal basis for his failure to advance an argument on direct appeal that the argument only became known to the movant due to subsequent developments in the law. *See id.* Likewise, a § 2255 movant cannot argue as the causal basis for the

default that the argument appeared to be futile in the then prevailing legal landscape. *McCoy,* 266 F.3d at 1259 (citing *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Conversely, if a defendant does raise a claim for relief on direct appeal, and a court of appeals rejects the claim advanced, the defendant usually cannot relitigate the rejected claim in a § 2255 proceeding. *Mills,* 36 F.3d at 1056 (citing *United States v. Hobson,* 825 F.2d 364, 366 (11th Cir.1987), *vacated on other grounds,* 492 U.S. 913, 109 S.Ct. 3233, 106 L.Ed.2d 581 (1989)).

With the foregoing rules in tow, the Court will address Movant's thirteen argued grounds for relief. For organizational purposes, the Court will address Movant's thirteen grounds for relief in groupings based upon the substantive law underlying Movant's various claims.

### A. Movant's RICO–Conspiracy– Related Grounds for Relief (1, 2, 3, 4, 9 and 12).

Movant advances six grounds for relief stemming from his conviction on count 1 of the indictment, which charged Movant with violating 18 U.S.C. § 1962(d), the conspiracy subsection of RICO. The substantive provisions defining the activities RICO prohibits— § 1962(a), (b) and (c)— proscribe certain conduct affecting enterprises through a pattern of racketeering activity. *See* 18 U.S.C. § 1962. Section 1962(c), the substantive RICO provision that Movant was charged with, and convicted of, conspiring to violate, provides in pertinent part as follows: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partici-

pate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1961(4) provides that the term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Although § 1961(4) does not expressly include governmental entities, such as state courts, in the definition of "enterprise," courts have consistently held that the term "enterprise" does encompass such entities.[3] Section 1961(5) provides that a "pattern of racketeering activity" is comprised of at least two acts of racketeering ("predicate acts" in RICO parlance) *see* 18 U.S.C. § 1961(5); Section 1961(1) provides that "racketeering activity" includes, *inter alia,* both acts chargeable under state bribery laws and acts indictable under 18 U.S.C. § 1341. *See* 18 U.S.C. § 1961(1). The Eleventh Circuit has delineated the following elements of an offense under § 1962(c): "(1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity." *United States v. Starrett,* 55 F.3d 1525, 1541 (11th Cir.1995) (citations omitted), *cert. denied sub nom., Sears v. United States,* 517 U.S. 1111, 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996).

Section 1962(d) provides, straightforwardly, "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

---

**3.** *See* G. Robert Blakey and Kevin P. Roddy, *Reflections on Reves v. Ernst & Young: It's Meaning and Impact on Substantive, Accessory, Aiding, Abetting and Conspiracy Liability* *under RICO,* 33 Am.Crim. L.Rev. 1345, 1479– 80 (1996) (text and accompanying footnotes citing cases).

18 U.S.C. § 1962(d). The Eleventh Circuit has stated that "[t]o establish a RICO conspiracy violation under 18 U.S.C. § 1962(d), the government must prove that the defendants objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes." *Starrett,* 55 F.3d at 1543 (internal quotation marks and citations omitted). "The focus is on the agreement to participate in the enterprise through a pattern of racketeering activity, not on the agreement to commit the individual predicate acts." *Id.* The Eleventh Circuit has also held that the government may prove a defendant's agreement in either of two ways: "(1) by showing an agreement on an overall objective, or (2) ... by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in a 'single objective' conspiracy." *Id.* at 1544. *See also, United States v. To,* 144 F.3d 737, 744 (11th Cir.1998). "The government can prove an agreement on an overall objective by circumstantial evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *Starrett,* 55 F.3d at 1544 (citation and internal quotation marks omitted).

The government's RICO conspiracy prosecution theory was that Movant and his co-defendants conspired to participate in the conduct of the affairs of the Eleventh Judicial Circuit through a pattern of racketeering activity involving, *inter alia,* mail fraud and bribery.

#### Movant's Ground 1.

In ground 1, Movant argues that "the jury was instructed on a legally inadequate theory to prove an agreement to participate in a RICO conspiracy, that is, by agreeing personally to commit at least two predicate acts." Movant's Mem. I at 1. Movant argues that the Supreme Court—in *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), a decision that post-dates his conviction—altered Eleventh Circuit RICO conspiracy law by declaring proof that a defendant agreed to commit personally two or more predicate acts to be an insufficient basis for establishing criminal liability under § 1962(d).

Movant's claim for relief in ground 1 must be rejected. First, Movant is procedurally barred from raising the claim because he failed to raise this argument on direct appeal. *See, McCoy,* 266 F.3d at 1258–59; *Mills,* 36 F.3d at 1055. Movant has not shown, and cannot show, either cause or prejudice for his default. This claim for relief was clearly "available" to Movant on direct appeal—*i.e.,* no further development of the factual record was required to assert it—and the fact that *Salinas* post-dates his direct appeal likewise does not excuse the default. *See McCoy,* 266 F.3d at 1258–59.

Even if Movant were not procedurally barred from raising this claim for relief, the claim must nevertheless be rejected because it is without merit. In *Salinas* the Supreme Court addressed, *inter alia,* whether one must agree to commit two predicate acts in order to violate § 1962(d). *See Salinas,* 522 U.S. at 54, 118 S.Ct. at 472. The Supreme Court answered this question in the negative, stating that "[t]he RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts." *Salinas,* 522 U.S. at 64, 118 S.Ct. at 477. Movant takes the holding of *Salinas* and argues therefrom

that "[t]hus, proof of an agreement to personally commit at least two predicate acts is *neither sufficient nor necessary* to sustain a conviction under § 1962(d)." Movant's Mem. I at 3 (emphasis added). Movant further argues that, in light of the jury's general verdict in this case, his conviction on count 1 must be vacated because it is impossible to determine whether the jury convicted him on this—allegedly— now defunct theory of RICO conspiracy liability. Movant, in essence, leaps from the premise that agreeing to commit two predicate acts is *unnecessary* to violate § 1962(d), to the conclusion that agreeing to commit two predicate acts is *insufficient* to sustain a conviction under § 1962(d). *Salinas* provides no footing for such a leap.

■ To the contrary, the *Salinas* Court made clear that, rather than being an insufficient basis for RICO conspiracy liability, proof that a defendant agreed to commit personally two or more predicate acts could sustain a conviction even in cases where the government's evidence against the defendant was otherwise tenuous. The *Salinas* Court explained:

[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, *but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.* He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion.

*Salinas,* 522 U.S. at 65, 118 S.Ct. at 477 (emphasis added). The Supreme Court continued:

It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or

agree to commit the two or more predicate acts requisite to the underlying offense. True, though an "enterprise" under § 1962(c) can exist with only one actor to conduct it, in most instances it will be conducted by more than one person or entity; and this in turn may make it somewhat difficult to determine just where the enterprise ends and the conspiracy begins, or, on the other hand, whether the two crimes are coincident in their factual circumstances. *In some cases the connection the defendant had to the alleged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part of the Government's case ... Nevertheless, that proposition cannot be sustained as a definition of the conspiracy offense, for it is contrary to the principles we have discussed.*

*Salinas,* 522 U.S. at 65–66, 118 S.Ct. at 477–78 (emphasis added).

The necessary inference from the foregoing passages in general, and the emphasized language in particular, is that proof that a defendant agreed personally to commit two or more predicate acts is *more than sufficient* to sustain a conviction for conspiring to violate RICO, not that such proof is *insufficient* to sustain a conviction. *Salinas,* therefore, did not overrule *Starrett* or otherwise alter Eleventh Circuit law regarding RICO conspiracy as Movant argues.

At trial this Court instructed the jury, consistent with the Eleventh Circuit's pronouncements on § 1962(d) controlling then and today, that in order to convict Movant on count 1 of the indictment the jury must find beyond a reasonable doubt that Movant agreed to join the conspiracy with the following state of mind:

[a]t the time the Defendant knowingly and willfully agreed to join in such con-

spiracy, he or she did so with the specific intent either to personally participate in the commission of two predicate offenses as elsewhere defined in these instructions, or that he specifically intended to otherwise participate in the affairs of the enterprise with the knowledge and intent that other members of the conspiracy would commit two or more predicate offenses as part of the pattern of racketeering activity.

November 9, 1994 Trial Tr. at 204. The jury convicted Movant in a general verdict on the evidence presented at trial. Reviewing the evidence on direct appeal, the Eleventh Circuit stated that "we find that each appellant agreed on an overall objective *and* agreed personally to commit two or more predicate acts by paying kickbacks for SAPD appointments," *Castro,* 89 F.3d at 1451 (emphasis added), and that the government therefore had proven the single RICO conspiracy alleged in the indictment on both bases. *Id.* Both bases remain valid, and Movant is not entitled to relief on ground 1.

### Movant's Ground 2.

In ground 2 Movant argues that "[t]he evidence was insufficient to prove that the defendant agreed to participate in a single RICO conspiracy with the 'same criminal objective.'" Movant's Mem. I at 4. In *Salinas,* as part of a recitation of the common-law principles of conspiracy law through which it would interpret the term "conspire" in § 1962(d), the Supreme Court stated that, "[t]he partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Salinas,* 522 U.S. at 63–64, 118 S.Ct. at 477. Movant argues that, with the phrase "same criminal objective," the Supreme Court defined a concept more narrowly circumscribed than the phrase "overall objective" used by the Eleventh Circuit in *Starrett, To, Castro,*

and its other § 1962(d) cases, and thus *Salinas* effectively overruled those cases. *See* Movant's Mem. I at 5–6. Movant argues that, under *Salinas,* he did not agree to a conspiracy with the "same criminal objective" as his co-defendants; at worst, he agreed only to a kickback scheme for SAPD appointments with Gelber, Wheeler and Judge Davis. *See id.* Movant further argues that he did not agree to commit or facilitate other criminal activity undertaken by other members of the conspiracy, and, therefore, the government failed to prove the single RICO conspiracy alleged in the indictment. *See id.*

Movant's ground 2 must also be rejected first because he is procedurally barred from raising it and, second, because the claim is without merit. The Court noted *supra* that, in connection with Movant's direct appeal, Movant challenged the sufficiency of the evidence to prove that he joined the single RICO conspiracy alleged in the indictment, and the Eleventh Circuit rejected that claim. *See Castro,* 89 F.3d at 1451–52. Movant may not now relitigate that issue here. *See Mills; McCoy.* To the extent that Movant's ground 2 is sufficiently novel such that it was not encompassed by his challenges on direct appeal, Movant can show neither cause for, nor prejudice from, the default.

■ Movant's ground 2 is also without merit as *Salinas* did not amend the longstanding principles of conspiracy law such as Movant argues. The *Salinas* Court reaffirmed that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas,* 522 U.S. at 64, 118 S.Ct. at 477. "One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." *Id.* at 65, 118 S.Ct. at 477. Likewise, the Eleventh Circuit has stated that "[r]egardless of the method used to

prove the agreement, the government does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive RICO crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy." *Starrett,* 55 F.3d at 1544 (citation and internal quotation marks omitted). "That each conspirator may have contemplated participating in different and unrelated crimes is irrelevant." *Id.* (citation omitted). "In proving the existence of a single RICO conspiracy, the government does not need to prove that each conspirator agreed with every other conspirator, knew of his fellow conspirators, was aware of all of the details of the conspiracy, or contemplated participating in the same related crime." *Castro,* 89 F.3d at 1451 (citing *United States v. Pepe,* 747 F.2d 632, 659–60 (11th Cir.1984)).

The government presented substantial evidence at trial upon which the jury found Movant to be guilty beyond a reasonable doubt of joining the RICO conspiracy alleged in the indictment. The Eleventh Circuit reviewed the same evidence and found it to be sufficient to sustain Movant's conviction. *Salinas* did not alter the law of conspiracy as Movant here argues. Movant is therefore not entitled to § 2255 relief under ground 2.

### Movant's Ground 3.

In ground 3 Movant argues that "[t]he evidence was insufficient to prove that the defendant conspired to participate in the 'operation or management' of the RICO enterprise." Movant's Mem. I at 5. In *Salinas* the Supreme Court stated that "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all the elements of a substantive criminal offense ...." Movant's Mem. I at 8 (citing *Salinas,* 522 U.S. at 65, 118 S.Ct. at 477). Movant argues that the endeavor he intended to further—*i.e.,* at worst a kickback scheme involving Judge Gelber,

Judge Davis and Wheeler—could not satisfy all of the elements of the substantive offense, to wit, § 1962(c). Movant focuses on the fourth element identified by the Eleventh Circuit of the substantive RICO offense under § 1962(c), *i.e.,* "that the defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise." *Starrett,* 55 F.3d at 1541. In *Reves v. Ernst & Young,* the Supreme Court held that, in order to satisfy this element of § 1962(c), one must "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993). Movant essentially argues that, at worst, he conspired with Gelber, who was "just a judge," one of dozens in the Eleventh Judicial Circuit, the alleged RICO enterprise, and not the chief judge or an administrative judge of the court. Movant argues that Gelber, as a "low-level" employee of the alleged enterprise, was thus incapable of satisfying the "operation or management" test of *Reves. See* Movant's Mem. I at 8–10. Movant's thus argues that because neither he nor his co-conspirator was capable of operating or managing the enterprise, under *Salinas,* Movant's conviction for RICO conspiracy should be vacated.

Movant's ground 3 must also be denied both because he is procedurally barred from raising it and because the argument is substantively without merit. First, as noted, the Eleventh Circuit rejected Movant's challenges on direct appeal to the sufficiency of the evidence establishing that he conspired to participate in the RICO conspiracy alleged in the indictment. *Castro,* 89 F.3d at 1452. Movant therefore cannot relitigate those issues here. *See Mills; McCoy.* Like ground 2, to the extent that Movant's ground 3 is sufficiently novel such that it was not encompassed by his challenges on direct appeal, Movant

can show neither cause for, nor prejudice from, the default.

■ Regarding the lack of substantive merit of ground 3, the Eleventh Circuit, and the majority of the other Circuits to consider the issue, have correctly ruled that the "operation or management" test of *Reves* is inapplicable to prosecutions under § 1962(d). *See Castro,* 89 F.3d at 1452 (citing *Starrett*); *see also, United States v. Warneke,* 310 F.3d 542, 547–48 (7th Cir.2002); *Smith v. Berg,* 247 F.3d 532, 536–38 (3d Cir.2001); *United States v. Zichettello,* 208 F.3d at 98–99; and *United States v. Posada–Rios,* 158 F.3d 832, 857 (5th Cir.1998). The *Reves* test is inapplicable to RICO conspiracy prosecutions because the test is intended to illuminate an element of the substantive RICO offense under § 1962(c), not the conspiracy offense under § 1962(d). And, as the Supreme Court stated in *Salinas,* "[i]t is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." *Salinas,* 522 U.S. at 65, 118 S.Ct. at 477–78 (citing *Callanan v. United States,* 364 U.S. 587, 594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961)). Thus *Salinas* reaffirmed the long-standing principle of conspiracy law that "[a] person may be guilty of conspiring to commit an offense although incapable of actually committing that offense." *United States v. Tenorio–Angel,* 756 F.2d 1505, 1513 (11th Cir.1985) (citing *United States v. Rabinowich,* 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915)). Therefore, even if Gelber were incapable of operating or managing the Eleventh Judicial Circuit under the *Reves* test, Movant would nevertheless be criminally liable for conspiring with Gelber to operate or manage that Court. Incapacity to violate a substantive offense is not a viable defense to conspiracy to violate that offense. *See Tenorio–Angel,* 756 F.2d at 1513.

It should be noted however that, Movant's argument to the contrary notwithstanding, Gelber was indeed capable of operating or managing the affairs of the Eleventh Judicial Circuit under *Reves.* In *Reves,* the Supreme Court elaborated upon the meaning of the "operation or management" test in part as follows:

> liability under § 1962(c) is not limited to upper management ... An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who assert control over it as, for example, by bribery.

*Reves,* 507 U.S. at 184, 113 S.Ct. at 1173. Gelber was a judge in the Eleventh Judicial Circuit, Dade County Circuit Court: in short, a courthouse. A courthouse's "affairs", in the most fundamental sense, comprise one activity, to wit, the administration of justice, the exercise of the judicial power as embodied in the court by constitution or legislation. A court conducts its affairs, *i.e.,* exercises its judicial power, by and through its judges. In essence, the court *is* its judges and the judges *are* the court. The jury found, and the Eleventh Circuit affirmed, that in scores of cases, Gelber and Movant corrupted the conduct of the affairs of the Eleventh Judicial Circuit by bribery and mail fraud. Even if Gelber's operation and management of the Eleventh Judicial Circuit were a predicate to Movant's RICO conspiracy liability, which it is not, Movant would still not be entitled to relief on ground 3.

### Movant's Ground 4.

Movant argues in ground 4 that, "[t]he RICO conspiracy charge was insufficient because it failed to allege any predicate acts." Movant's Mem. I at 10. Movant argues that his conviction on count 1 of the

indictment ought to be vacated because the indictment was legally insufficient. Movant's ground 4 must also be denied both because Movant is procedurally barred from raising it, *see Mills,* and because the claim is substantively without merit. Movant failed to raise this claim on direct appeal and has not shown, and cannot show, cause for, or prejudice from, the default.

■ Regardless, the indictment in this case was legally sufficient. "An indictment is sufficient if it: (1) presents the essential elements of the offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele,* 178 F.3d 1230, 1233–34 (11th Cir.1999), *cert. denied,* 528 U.S. 933, 120 S.Ct. 335, 145 L.Ed.2d 261 (1999) (internal quotations and citations omitted). These requirements serve two functions. "First, it puts the defendant on notice of the nature and cause of the accusation as required by the Sixth Amendment of the Constitution. Second, it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime." *United States v. Fern,* 155 F.3d 1318, 1325 (11th Cir.1998).

The Supreme Court made clear in *Salinas* that "there is no requirement of some overt act or specific act in the statute before us." *Salinas,* 522 U.S. at 63, 118 S.Ct. at 476. The Eleventh Circuit has likewise stated that to establish a RICO conspiracy the government must prove that the defendant agreed to participate in the conduct of the affairs of an enterprise, not that the defendant agreed to commit predicate acts. *See Starrett,* 55 F.3d at 1543. While the Court's research has not uncovered an Eleventh Circuit decision precisely addressing the issue raised in Movant's ground 4, the Seventh Circuit has correctly stated the following:

> [t]o list adequately the elements of section 1962(d), an indictment need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity ... Neither overt acts, nor specific predicate acts that the defendant agreed personally to commit, need be alleged or proved for a section 1962(d) offense.

*United States v. Glecier,* 923 F.2d 496, 500 (7th Cir.1991), *cert. denied,* 502 U.S. 810, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991).

■ The indictment in this case identified the enterprise as the Eleventh Judicial Circuit. It alleged that Movant and his co-defendant's "being persons employed by and associated with an enterprise ... did unlawfully, knowingly and willfully combine, conspire, confederate and agree ... to violate ... Section 1962(c), that is, to conduct and participate, directly or indirectly, in the conduct of the affairs of the enterprise though a pattern of racketeering activity." Indictment, ¶ 3. The indictment further alleged that among Movant's objects in joining the conspiracy was self-enrichment through the exchange of SAPD appointments for kickbacks. *See* Indictment, ¶ 7. The indictment also alleged that among the means and methods of the conspiracy were the following: Movant's periodic payments to Gelber in exchange for SAPD appointments, Movant's use of the United States mails to further the conspiracy, and Movant's recruitment of another attorney (Wheeler) to engage in the conspiracy. *See* Indictment, ¶¶ 20–22, 32–33, 38–41. The indictment therefore

more than adequately set forth the essential elements of § 1962(d), apprised Movant of the charges against him, and protected Movant from any risk of double jeopardy arising from a judgment in this case.

### Movant's Ground 9.

The basis for the Court's rejection of ground 9 is closely related to the basis for the Court's rejection of Movant's ground 4. In ground 9 Movant argues that "Appellate counsel was ineffective in failing to argue that the trial court's denial of the defendant's motion for bill of particulars which requested to identify acts not specified in the RICO conspiracy charge was reversible error." Movant's Mem. I at 24. Movant argues that the prosecution presented evidence at trial that Movant conspired not only with Gelber, but also with Judge Davis. Movant further alleges that he was surprised and prejudiced by this evidence at trial, and that his appellate counsel was therefore constitutionally ineffective for failing to argue on appeal that this Court's denial of a bill of particulars constituted reversible error.

■■ The well-known standard for constitutionally ineffective assistance of counsel was articulated by Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order for a movant to show that habeas corpus relief is warranted due to ineffective assistance of counsel, a movant must demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient representation prejudiced the movant's defense, that is, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. The standard articulated in *Strick-*

*land* applies to appellate proceedings as well as trial proceedings. *Johnson v. Alabama*, 256 F.3d 1156, 1187–88 (11th Cir. 2001), *cert. denied*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).

■■ Movant's appellate counsel's failure to argue on appeal that the Court's denial of a bill of particulars was reversible error did not constitute constitutionally ineffective assistance of counsel. Appellate courts "will reverse a district court's refusal to grant a request for a bill of particulars only if it can be shown that the defendant was actually surprised at trial and thereby incurred prejudice to his substantial rights." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir.1985). "A denial of a bill of particulars is likewise reversible only on a showing of clear abuse of discretion." *United States v. Warren*, 772 F.2d 827, 837 (11th Cir.1985), *cert. denied sub nom., Moore v. United States*, 475 U.S. 1022, 106 S.Ct. 1214, 89 L.Ed.2d 326 (1986) (citing *Cole*). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Id.* As the Court found in addressing Movant's ground 4, the indictment in this case was fully legally sufficient and suffered none of the defects that a bill of particulars is intended to cure. Given the discretion appellate counsel must exercise in choosing arguments to raise on direct appeal, Movant's counsel's decision not to raise a challenge to the Court's denial of a bill of particulars was not objectively unreasonable under *Strickland*. And given the strength of the indictment in this case and the wide discretion district courts are granted in ruling upon motions for bills of particular, there was no reasonable probability that asserting this argument would

have changed the result of Movant's direct appeal, *i.e.*, Movant suffered no prejudice under *Strickland* from his counsel's decision.

### Movant's Ground 12.

■ Movant advances one final RICO-conspiracy-related ground for relief stemming from the Court's forfeiture judgment pursuant to 18 U.S.C. § 1963(a)(1), which provides that any person who violates any provision of § 1962 "shall forfeit to the United states ... any interest the person has acquired or maintained in violation of section 1962." Movant argues that "[f]orfeiture of the attorney's fees earned by the defendant was constitutionally excessive." Movant's Mem. I at 37. Movant bases his argument in ground 12 on *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), which held that a fine that is "grossly disproportional" to the gravity of the offense is unconstitutional under the Eighth Amendment. Movant's argument must be denied both because he is procedurally barred from raising it, having failed to raise this claim on direct appeal, and because the claim is substantively without merit. Movant and the government consented to this Court determining the amount of any forfeiture to be paid by Movant and his co-defendants to the United States. The evidence at trial established that the RICO conspirators collectively obtained $456,422.00 through their unlawful activities, Movant and Wheeler combined obtained $111,954.00, out of which Movant alone obtained $77,204.00. Under *United States v. Caporale*, 806 F.2d 1487, 1506–08 (11th Cir. 1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987), the Court could have adjudged Movant to be jointly and severally liable for the entire sum obtained by the RICO conspirators collectively, *i.e.*, $456,422.00. The Court's forfeiture order was therefore clearly not grossly disproportional to the gravity of Movant's offense or constitutionally excessive.

### B. Bribery–Related Grounds for Relief (5, 6, 7, and 10).

Movant advances four grounds for relief stemming from his conviction on count 81 of the indictment, which alleged that Movant bribed Gelber with the intent to influence an agent of Metro Dade in violation of 18 U.S.C. § 666(a)(2). Section 666(a)(2) provides, in pertinent part, criminal liability for any person who "corruptly gives ... any thing of value to any person, with intent to influence or reward an agent of a[ ] ... local ... government, or any agency thereof, in connection with any ... transaction, or series of transactions of such ... agency involving anything of value of $5,000 or more ... [if] ... the ... agency receives, in any one year period, benefits in excess of $10,000 under a Federal program ...." 18 U.S.C. § 666(a)(2). Addressing Movant's direct appeal, the Eleventh Circuit stated that the government was required to prove at trial that Movant "(1) gave or offered to give a thing of value to any person (2) with the corrupt intent to influence or reward an agent of an organization that in a one-year period received benefits in excess of $10,000 under a federal program (3) in connection with any business transaction or series of transactions of such organization, government or agency involving anything of value of $5,000 or more." *Castro*, 89 F.3d at 1454 (citing 18 U.S.C. § 666(a)(2)).

### Movant's Ground 5.

■ In ground 5, Movant argues that "[t]he bribery charge was insufficient because it failed to identify the agent of Metropolitan Dade County who [*sic*] the defendant allegedly intended to influence." Movant's Mem. I at 13. Movant's ground 5 must also be denied both because Movant is procedurally barred from raising it,

having failed to raise this claim on direct appeal, *see Mills,* and because the claim is substantively not meritorious. Regarding the lack of substantive merit, the text of § 666(a)(2) and the Eleventh Circuit's stated construction of the same make plain that the government was not required to prove the identity of the Metro Dade agent whom Movant intended to influence. The identity of the agent whom a defendant sought to influence is clearly not among the elements of the offense under § 666(a)(2) enumerated by the Eleventh Circuit. *See Castro,* 89 F.3d at 1454. Because it is not an element of the offense, the indictment was legally sufficient without an allegation regarding the identity of the Metro Dade agent whom Movant sought to influence. *See Steele,* 178 F.3d at 1233–34 and *Fern,* 155 F.3d at 1325.

In the indictment, the government alleged, in the cross-referenced general allegations and in allegations of count 81, in relevant part, as follows:

> Metropolitan Dade County received, "in any one year period" ... benefits in excess of $10,000 under a Federal program ... Beginning in or about January 1989 and continuing through in or about June 1991 ... [Movant] ... did knowingly and corruptly give ... cash money ... to Roy Gelber, with the intent to influence an agent of Metropolitan Dade County in connection with business transactions ... between Metropolitan Dade County and [Movant] involving something of value $5,000 or more.

Indictment at 2, 65–66. These allegations were legally sufficient under *Steele* and *Fern.*

The Eleventh Circuit's rejection of Movant's *"quid pro quo"* argument on direct appeal further confirms that the government was not required to allege in the indictment or prove at trial the identity of the Metro Dade agent Movant sought to influence. On direct appeal, Movant argued that his § 666(a)(2) conviction must be reversed because the government failed to prove that Movant entered into a direct exchange or *"quid pro quo"* with an agent of the organization (*i.e.,* Metro Dade) receiving federal benefits. *See Castro,* 89 F.3d at 1453. Rejecting Movant's argument, the Eleventh Circuit stated that "the appellants' narrow reading of the statute would belie the statutes purpose 'to protect the integrity of the vast sums of money distributed through federal programs from theft, fraud, and undue influence by bribery.'" *See id.* at 1454 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 369–70 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3510–11). Clearly, if the government was not required to prove at trial a direct exchange between Movant and *any* agent of Metro Dade, the government was not required to allege or prove the identity of a particular Metro Dade agent Movant sought to influence.

### Movant's Ground 6.

Movant argues in ground 6 that, "[t]he appellate theory upholding the defendant's conviction under 18 U.S.C. § 666 premised on a finding of intent to influence an agent of Metropolitan Dade County through her issuance of compensation checks was not supported by the indictment or proof at trial." Movant's Mem. I at 15. Movant argues in essence that Eleventh Circuit affirmed his bribery conviction on a theory that Movant intended to influence a Metropolitan Dade County agent by paying bribes to Gelber, but that the evidence at trial supported, at worst, a finding that Movant intended to influence Gelber only. Movant argues that the government failed to make a sufficient connection at trial between Movant's payments to Gelber and Movant's intent to influence an agent of Metro Dade. Movant further argues that the Eleventh Circuit "clearly ... attempted to construe the evidence presented at

trial which the government had left unexplained." Movant's Mem. I. at 18. Citing, *inter alia, Dunn v. United States,* 442 U.S. 100, 106–07, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979), Movant argues that the Eleventh Circuit thus improperly affirmed his conviction on a theory of the evidence that the government neither alleged in the indictment, nor proved at trial.

The government alleged in the indictment, offered evidence at trial, and argued to the jury that Movant paid bribes to Gelber for SAPD appointments so that Gelber would authorize Metro Dade to pay Movant SAPD fees, in other words, to influence transactions between Movant and Metro Dade. Nothing in the record suggests that Movant expected Gelber to pay Movant's SAPD attorney fees directly. The record was clear that Movant knew full well that SAPD fees were paid to appointed attorneys by Metro Dade, not the Eleventh Judicial Circuit. The jury and the Eleventh Circuit therefore reasonably inferred from the evidence that Movant intended to influence, through Gelber, an agent of Metro Dade. The Eleventh Circuit stated as follows:

> It is clear from the record that the appellants knew that payments for SAPD services came from Metropolitan Dade County and not the Circuit Court. Moreover, appellants knew that they could not receive payments from Metropolitan Dade County unless a circuit court judge authorized Metropolitan Dade County to pay the bill or influenced an agent in the Dade County Finance Department to issue the checks. We believe that the government proved that appellants not only intended to influence Gelber, but they also intended to influence an agent in the Dade County Finance Department by having Gelber authorize the agent to issue payments for their SAPD services.

*Castro,* 89 F.3d at 1454. This was the theory of the evidence that the government alleged in the indictment and presented to the jury. Contrary to Movant's argument in ground 6, the Eleventh Circuit affirmed his conviction on precisely the theory of the evidence that the government alleged in the indictment and presented at trial and that the jury found to be true beyond a reasonable doubt.

### Movant's Ground 7.

Movant argues in ground 7 that, "[t]rial counsel was ineffective in failing to challenge the sufficiency of the evidence to prove that, under 18 U.S.C. § 666, Metropolitan Dade County received benefits under a federal program pursuant to a 'specific statutory scheme authorizing the federal assistance in order to promote or achieve certain objectives.'" Movant's Mem. I at 19. Movant argues that, while the government presented evidence at trial that Metro Dade received in excess of $10,000 in federal grant money during the statutorily relevant years, the government presented no evidence identifying the specific statutory scheme pursuant to which Metro Dade received such funds. Movant is not entitled to relief on ground 7 because—as both the language of § 666(a)(2) and the Eleventh Circuit's understanding of the elements of the offense thereunder make plain—the government was not required to allege or prove at trial the identity of the specific statutory scheme pursuant to which Metro Dade received federal benefits. Rather, the government was required to prove, *inter alia,* that Metro Dade received in excess of $10,000 in benefits from the federal government under *a* federal program.

The government offered such evidence through an assistant controller of Metro Dade's Finance Department to prove this element of the offense. And while the Eleventh Circuit did not address on Mov-

ant's direct appeal the precise argument he advances in ground 7, in rejecting a related argument the Eleventh Circuit explained that the government was not required to present such detailed evidence regarding the federal program under which Metro Dade received benefits. Movant argued on direct appeal that, under Federal Rule of Evidence 1002—the so-called "best evidence rule," which provides that to prove the contents of a document one must generally use the original document—the government should have entered into evidence its composite exhibit detailing the federal funds Metro Dade received, instead of presenting the controller's testimony in lieu of the exhibit. *See Castro,* 89 F.3d at 1455. The Eleventh Circuit's basis for rejecting Movant's evidentiary argument was that the witness's testimony was not directed to the "contents" of the government's composite exhibit, *i.e.,* the details of the federal funds. *See id.* Instead, consistent with the elements of the offense under § 666(a)(2), the government's questions of the controller and the witness's testimony were simply "aimed at showing Dade County received substantially more than $10,000 in federal grants, *and not necessarily the exact amount or details surrounding the county's receipt of millions of dollars in federal grants.*" *Id.* (emphasis added). The Eleventh Circuit thus affirmed that the controller's testimony was properly admitted over Movant's Rule 1002 objection because the government was not required to elicit from the witness the contents of the exhibit, to wit, the details of the federal programs under which Metro Dade received benefits.

Because the government was not required to present evidence identifying the specific statutory scheme under which Metro Dade received federal benefits, no prejudice under *Strickland* inured to Movant's detriment on account of his counsel's failure to challenge the sufficiency of the evidence on this point. Movant's counsel's

failure to challenge the sufficiency of the evidence in this manner was also not, therefore, a deficiency falling below an objective standard of reasonable representation under *Strickland.*

### Movant's Ground 10.

Movant argues in ground 10 that, "[a]ppellate counsel was ineffective in failing to argue that the trial court's denial of the defendant's bill of particulars on the bribery charge which requested the identity of the agent of Metropolitan Dade County and the latter's action which the defendant allegedly intended to influence was reversible error." Ground 10 is without merit. In short, as the Court noted *supra* in addressing Movant's ground 5, the government was not required to allege in the indictment or prove at trial the identity of the Metro Dade agent whom Movant intended to influence by bribing Gelber. The allegations in the indictment on count 81 were therefore sufficient for Fifth and Sixth Amendment purposes under *Steele* and *Fern,* and a bill of particulars was therefore not indicated under the principles articulated *Cole* and *Warren.* Movant's appellate counsel therefore was not constitutionally ineffective under *Strickland* for failing to argue on direct appeal that this Court's denial of a bill of particulars was reversible error.

### C. Mail–Fraud–Related Grounds for Relief (8, 11, and 13).

Movant advances three grounds for relief stemming from his convictions on counts 7 through 32 in the indictment, which charged Movant with causing the United States mails to be used in a scheme to defraud the State of Florida of the honest services of Gelber, in violation of §§ 1341, 1346 and 2. Section 1341 provides, in pertinent part, criminal liability for any person who "having devised or intending to devise any scheme or artifice to defraud . . . for the purpose of executing such

scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be delivered by the Postal Service." 18 U.S.C. § 1341. Section 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Section 2 is the codification of accomplice liability in Title 18, which provides in relevant part that any person who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal" committing the offense. 18 U.S.C. § 2(b). The Eleventh Circuit has stated that, "[t]o prove mail fraud, the government must show that the accused (1) intentionally participated in a scheme or artifice to defraud and (2) used the United States mails to carry out that scheme or artifice." *United States v. Waymer,* 55 F.3d 564, 568 (11th Cir.1995), *cert. denied,* 517 U.S. 1119, 116 S.Ct. 1350, 134 L.Ed.2d 519 (1996).[4] "The 'honest services amendment' to the mail fraud statute, 18 U.S.C.A. § 1346, allows the United States to predicate a mail fraud prosecution on a 'scheme or artifice to deprive another of the intangible right of honest services.' "[5] *Id.* The government's prosecution theory on the mail fraud counts, in short, was that Movant caused Metro Dade to mail him compensation checks for SAPD services as part of a scheme to defraud the State of Florida of Gelber's honest services as a judge.

Movant's Ground 8.

Movant argues in ground 8 that, "[t]rial counsel was ineffective in failing to object to the mail fraud jury instruction which omitted an essential element of the offense, to wit: specific intent to defraud." Movant's Mem. I at 8. Movant's ground 8 is without merit. The Eleventh Circuit has made clear that district courts have substantial latitude in issuing jury instructions, so long as the instructions accurately reflect the law; in reviewing a district court's jury instructions, the Eleventh Circuit "examine[s] whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *United States v. Fulford,* 267 F.3d 1241, 1245 (11th Cir.2001) (citation omitted). The Eleventh Circuit "will reverse the district court because of an erroneous instruction only if [the appellate court is] 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.' " *Id.* (citation omitted).

---

4. Citing *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Eleventh Circuit has also recently noted that "materiality" is an element of the federal mail fraud, wire fraud, and bank fraud statutes. *United States v. deVegter,* 198 F.3d 1324, 1328 n. 4 (11th Cir.1999), *cert. denied,* 530 U.S. 1264, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000). Movant predicates his thirteenth ground for relief on *Neder,* so the *Neder* decision and the "materiality" element of the mail fraud offense are discussed in greater detail *infra.*

5. Congress passed § 1346 in response to the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In *McNally,* the Supreme Court held that § 1341 did not reach schemes to defraud another of an intangible right to "honest services", but was limited to schemes to defraud another of money or property rights. *See McNally,* 483 U.S. at 358–59, 107 S.Ct. at 2880–81. Prior to *McNally,* federal courts had generally held that one could violate § 1341 by defrauding another of an intangible right to "honest services." *See id.* The Eleventh Circuit has stated that Congress's intent in passing § 1346 was to restore the mail fraud statute to its pre-*McNally* condition of criminalizing schemes to defraud another of an intangible right to honest services. *See Waymer,* 55 F.3d at 568 n. 3.

■ Under these standards, the Court's instructions to the jury regarding the mail fraud counts in Movant's case were not deficient as Movant argues in ground 8. Regarding the mail fraud counts, the Court instructed the jury, in relevant part, as follows:

A Defendant can be found guilty of that offense, that is the Defendants can be found guilty of the mail fraud offenses charged in this indictment, only if the all of the following facts are proved beyond a reasonable doubt:

First: That the Defendant knowingly and willfully devised a scheme or plan to deprive the State of Florida of its intangible right of honest service; that is, its right to have the affairs of the Eleventh Judicial Circuit in and for Dade County conducted honestly and impartially, free from deceit, craft [sic], corruption, fraud, undue influence, conflict of interest, and bribery.

And second: That the Defendant used the United States Postal Service by mailing or by causing to be mailed, some matter or thing for the purpose of executing the scheme to defraud. The word scheme includes any plan or course of action intended to deprive another of the intangible right of honest services . . .

What must be proved beyond a reasonable doubt, is that the Defendant knowingly and willfully devised or intended to devise a scheme to defraud, substantially the same as the one alleged in the indictment, and that the use of the U.S. Mails was closely related to the scheme, because the Defendant either mailed something, or caused it to be mailed, in an attempt to execute or carry out the scheme ... *To act with intent to defraud, means to act knowingly and with*

*the specific intent to deceive someone; ordinarily for the purpose of causing some financial loss to another, or bringing about some financial gain to one's self.*

November 9, 1994 Trial Tr. at 211–12 (emphasis added). Taken together, these instructions more than adequately informed the jury of the issues in the case, including the state of mind element of the offense. Movant's counsel was therefore not constitutionally deficient under *Strickland* for failing to challenge these instructions as Movant argues in ground 8; Movant suffered no prejudice under *Strickland*, and his counsel's failure to object certainly did not fall below an objective standard of reasonable representation.

### Movant's Ground 11.

■ In ground 11, Movant argues that "[a]ppellate counsel was ineffective in failing to argue that the mail fraud counts did not allege, and the evidence at trial did not prove, that the defendant violated, or caused to be violated, a duty regarding services owed to the State of Florida under state law." Movant's Mem. I at 31. Movant argues that the "honest services" of which the State of Florida was defrauded must have been owed to the State of Florida under state law. Movant further argues that the government did not allege in the indictment or prove at trial that Movant's conduct violated or caused to be violated a duty owed under Florida law.

Movant predicates his argument in ground 11 primarily upon a Fifth Circuit decision, *United States v. Brumley*, 116 F.3d 728 (5th Cir.1997)(en banc), *cert. denied*, 522 U.S. 1028, 118 S.Ct. 625, 139 L.Ed.2d 606 (1997).[6] In *Brumley*, the defendant, a director of the Texas Workers'

---

**6.** Petitioner also relies upon *United States v. Shotts*, 145 F.3d 1289 (11th Cir.1998), *cert. denied*, 525 U.S. 1177, 119 S.Ct. 1111, 143

L.Ed.2d 108 (1999), an inapposite case ruling that the term "property" as used in § 1341 must be defined by looking to state law.

Compensation Commission, appealed his convictions under §§ 1343 (wire fraud) and 1346, arguing, *inter alia,* that Congress did not intend to criminalize under § 1346 schemes to deprive a state government entity of the intangible right to honest services. *See Brumley,* 116 F.3d at 731. In affirming the defendant's convictions, the Fifth Circuit ruled that, under § 1346, the honest services that defendant owed to the state must have been owed under state law. *See id.* at 734.

The Circuits have split over this issue. *Compare, Brumley,* 116 F.3d at 731, *with United States v. Bryan,* 58 F.3d 933, 939–40 (4th Cir.1995)(underlying state law or state regulation violation not a necessary predicate to § 1346 violation). But, Movant's reliance on *Brumley* is anyway misplaced. The Eleventh Circuit, in its own § 1346 jurisprudence, has made clear that no underlying state law violation is required to sustain a conviction under § 1346. The Eleventh Circuit has unambiguously stated that public officials owe inherent fiduciary duties to the public and that violations of the same are proper predicates to convictions under § 1346.

For example, in *United States v. Lopez–Lukis,* 102 F.3d 1164, 1168–70 (11th Cir. 1997), a case involving convictions under §§ 1341 and 1346 relating to the bribery of a county commissioner, the Eleventh Circuit stated that "[e]lected officials generally owe a fiduciary duty to the electorate." *See id.* at 1169 (citation omitted). "When a government officer decides how to proceed in an official endeavor ... his constituents have a right to have their best interests form the basis of that decision." *See id.* "If the official instead secretly makes his decision based on his own personal interests—as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest—the official has defrauded the public of his honest services." *See id.* (citing *United States v.*

*Sawyer,* 85 F.3d 713, 724 (1st Cir.1996)). Similarly, contrasting the source of the duties owed by private and public sector fiduciaries, the Eleventh Circuit stated in *deVegter* that "public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest." *United States v. deVegter,* 198 F.3d at 1328. The Eleventh Circuit in *Lopez–Lukis* also made clear that whether a corrupt public official's decision benefits the public is irrelevant: "Sections 1341 and 1346 do not address the wisdom or results of a[ ] decision; rather, they concern the manner in which officials make their decisions." *See Lopez–Lukis,* 102 F.3d at 1169, n. 13. *See also, Waymer,* 55 F.3d at 572 ("We find no merit in [defendant's] contention that as a fiduciary to the citizens of Atlanta, he had no duty to disclose the fact that he was receiving fifteen percent of what the school board was paying to" a pest control contractor).

The foregoing makes plain that, under the controlling law of the Eleventh Circuit, the government was not required to allege in the indictment or prove at trial that Movant violated or caused to be violated a duty expressly owed under state law in order to establish Movant's violations of §§ 1341 and 1346. Therefore, Movant's appellate counsel was not constitutionally ineffective under *Strickland* for failing to challenge the indictment or the evidence in this respect on direct appeal.

### Movant's Ground 13.

In his final argued ground for relief, Movant argues that the Court's "[j]ury instruction which omitted materiality as an essential element of mail fraud was error." Movants Mem. II at 1. Movant predicates his argument in ground 13 upon the Supreme Court's decision in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Neder,* reviewing an Eleventh Circuit decision, the Supreme

Court addressed, *inter alia*, the question of "whether materiality is an element of a 'scheme or artifice to defraud' under the mail fraud (18 U.S.C. § 1341), wire fraud (§ 1343), and bank fraud (§ 1344) statutes." *Neder*, 527 U.S. at 19, 119 S.Ct. at 1839. The Supreme Court answered this question in the affirmative, holding "that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *See id.* at 25, 119 S.Ct. at 1841. Movant argues that his mail fraud convictions must be vacated because this Court erred in failing to instruct the jury on an element of the offense—to wit, materiality—and that such error was not harmless.

The issue of whether—and if so, how— the *Neder* decision affects Movant's case is a complex one. The government argues in response first that the rule announced in *Neder* is not applicable retroactively on collateral review because it is barred from such application under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)(holding that, with two narrow exceptions, a new constitutional rule of criminal procedure is not a basis for vacating a conviction that became final before the rule was announced). The government further argues that *Neder* is anyway inapplicable to Movant's mail fraud convictions because Movant's was a scheme to defraud the State of Florida of its intangible right of honest services under §§ 1341 *and* 1346, a statute not before the Supreme Court in *Neder*, and not a scheme to defraud another of property under § 1341 alone. In the R & R, the Magistrate found that the holding of *Neder* was inapplicable to schemes to defraud under § 1346, expressly accepting the government's second argument and implicitly rejecting the government's first argument that the rule announced in *Neder* was *Teague*-barred.

As a threshold matter, the Court notes that Movant is not entitled to relief on ground 13 because he is procedurally barred, if not *Teague*-barred, from raising the claim, having failed to raise it on direct appeal. *See Mills*. As noted *supra*, the fact that the Supreme Court's decision in *Neder* post-dates Movant's direct appeal does not constitute "cause" under *Frady* justifying his failure to raise this claim on direct appeal. Movant also suffered no prejudice under *Frady* from the Court's error, because, as the Court discusses *infra*, the Court's error was harmless.

Even if Movant were not procedurally barred from raising this claim for relief, Movant is not entitled to relief on ground 13, though not because the holding of *Neder* is barred from retroactive application under *Teague*, as the government argues, and not because the holding of *Neder* is inapplicable to convictions under §§ 1341 and 1346, as the Magistrate ruled. Movant is substantively not entitled to relief on ground 13 because this Court's failure to instruct the jury on materiality was harmless error.

In *Neder*, the Supreme Court granted certiorari to review the decision of the Eleventh Circuit in *United States v. Neder*, 136 F.3d 1459 (11th Cir.1998), in which the Eleventh Circuit held, *inter alia*, that materiality is not an element of the fraud offenses under §§ 1341, 1343 and 1344. *See Neder*, 136 F.3d at 1462–65. The defendant in *Neder*, Ellis E. Neder, was convicted under §§ 1341, 1343 and 1344 for devising and executing various schemes to defraud lenders in connection with land purchases and development loans, that is, schemes to defraud others of money. *See id.* at 1461. The district court presiding in Neder's case instructed the jury that "materiality" was an element of the fraud offenses, but further instructed the jury that—so long as it found Neder's statements, representations and promises to be

false—it need not consider whether they were material, because materiality was not an issue for the jury to decide. *See id.* Neder challenged these instructions on direct appeal. *See id.* Relying heavily on the texts of §§ 1341, 1343 and 1344, respectively, none of which include the term "material", as well as the Supreme Court's decision in *United States v. Wells*, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)(holding that materiality is not an element of the false statement offense under 18 U.S.C. § 1014), the Eleventh Circuit held that materiality is not element of the fraud offenses under § 1341, 1343 and 1344. *See Neder*, 136 F.3d at 1461. The Elevent Circuit therefore ruled that it was not error for the district court not to submit the issue of materiality to the jury. *See id.*

The Supreme Court granted certiorari to resolve a conflict in the Courts of Appeals regarding, *inter alia*, "whether materiality is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder*, 527 U.S. at 7, 119 S.Ct. at 1832–33. To resolve this conflict, the Supreme Court interpreted the term "defraud" as used in §§ 1341, 1343, and 1344 through the prism of that term's well-settled, common-law meaning. *See Neder*, 527 U.S. at 21–22, 119 S.Ct. at 1840. The Supreme Court noted that "fraud" at common law "required a misrepresentation or concealment of *material* fact." *Neder*, 527 U.S. at 23, 119 S.Ct. at 1840 (emphasis original). The Supreme Court further noted the following:

> under the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses, we cannot infer from the absence of an express reference to materiality that Congress intended to drop that element from the fraud statutes. On the contrary, we must *presume* that Congress intended to incorporate materiality unless the statute otherwise dictates.

*Neder*, 527 U.S. at 23, 119 S.Ct. at 1840 (internal quotation marks and citation omitted; emphasis original). Rejecting the government's attempts to rebut this presumption, the Supreme Court held that the materiality element of common-law fraud was incorporated into the term "defraud" of the federal fraud statutes at issue— §§ 1341, 1343 and 1344—and, therefore, materiality of falsehood is an element of these federal fraud offenses. *Neder*, 527 U.S. at 25, 119 S.Ct. at 1841. The *Neder* Court also held that omitting an element of the offense from the jury charge was subject to harmless error review. *See Neder*, 527 U.S. at 14–15, 119 S.Ct. at 1837. The Supreme Court therefore remanded the case to the Eleventh Circuit for a determination of whether the district court's instructional error was harmless. *See Neder*, 527 U.S. at 25, 119 S.Ct. at 1841.

 Considering what the Supreme Court said and did in its *Neder* decision, two conclusions seem not only reasonable, but inescapable, to this Court. First, contrary to the government's argument in the instant proceeding, *Teague v. Lane* does not bar application of *Neder's* holding retroactively on collateral review in the Eleventh Circuit. In *Teague*, the Supreme Court held that a new constitutional rule of criminal procedure is not applicable to cases that are final at the time the rule is announced, and such rules are therefore not proper bases for vacating convictions retroactively on collateral review. *See United States v. Swindall*, 107 F.3d 831, 834 (11th Cir.1997) (citing *Teague* ).

The Supreme Court has directed federal courts to use a three-step analysis in determining whether a claim for relief is *Teague*-barred:

> 1. Whether the *Teague* rule is applicable, *i.e.*, whether petitioner's conviction became final before the case upon which he relies was announced.

2. Whether the case upon which the petitioner relies announced a "new rule."

3. Whether either of two exceptions to the non-retroactivity of a new rule is applicable.

*Swindall,* 107 F.3d at 834–35 (citing *Caspari v. Bohlen,* 510 U.S. 383, 389–90, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) and *Spaziano v. Singletary,* 36 F.3d 1028, 1042 (11th Cir.1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995)).

Regarding the first question under the *Teague* three-step analysis, Movant's conviction became final in 1997, well before *Neder* was decided in 1999. That test is therefore satisfied. Regarding the second question, however, while the Court's research at the time of the drafting of this Order has not discovered a published Eleventh Circuit opinion in which it analyzed *Neder* under *Teague,* this Court finds that *Neder* announced more than a new constitutional rule of criminal procedure. The government argues that in *Neder* the Supreme Court merely held that "materiality" under the federal fraud statutes was an issue to be determined by the jury, and not the judge, that is, a rule of procedure akin to that announced in *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (holding that the issue of materiality under 18 U.S.C. § 1001 is one for the jury, not the judge, to decide). The government's position is untenable.

The Eleventh Circuit recently noted in *Ross v. United States,* 289 F.3d 677, 681

(11th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 944, 154 L.Ed.2d 787 (2003), that *"Teague*'s bar ... does not apply when the Supreme Court decides a new substantive rule of criminal law as opposed to a new procedural rule." *See id.* "And a new rule is substantive when it interprets 'the meaning of a criminal statute enacted by Congress' so that the conduct for which a defendant was convicted may no longer be illegal." *See id.* (quoting *Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998)). This is precisely what the Supreme Court, in part, did in *Neder.* In *Neder* the Supreme Court reversed that portion of the Eleventh Circuit's ruling in *Neder,* 136 F.3d 1459, which held that—as a matter of substantive law, not procedure—materiality is not an element of the federal fraud statutes there at issue. *See Neder,* 527 U.S. at 25, 119 S.Ct. at 1841. The Supreme Court thus construed §§ 1341, 1343 and 1344, substantively, and announced definitively that materiality is an element of the offenses proscribed by those statutes, resolving a dispute among the Courts of Appeals on that question. *See id.* The Supreme Court was patently not creating a new rule of criminal procedure when it harkened back to the common law to discern Congress's intent in using the word "defraud" in the federal fraud statutes. In *Neder,* the Supreme Court therefore announced a change in the substantive law of the Eleventh Circuit regarding the federal fraud statutes at issue.[7] And, to the extent that *Neder* heralded a change in the Eleventh Circuit's substantive law of federal mail,

---

**7.** At the time of the drafting of this Order, this Court's research uncovered only one Court of Appeals decision analyzing *Neder* under *Teague.* The Seventh Circuit, in *Mankarious v. United States,* 282 F.3d 940, 943–45 (7th Cir. 2002), ruled that, in the Seventh Circuit, *Neder* announced a constitutional rule of criminal procedure. *See id.* This Court finds *Mankarious* to be distinguishable from the instant case. In *Mankarious,* the Seventh Circuit

predicated its ruling on the ground that, in the Seventh Circuit at least, materiality had been an element of a mail fraud offense prior to the Supreme Court's decision in *Neder. See Mankarious,* 282 F.3d at 943 (citing *United States v. Coffman,* 94 F.3d 330, 335 (7th Cir.1996)). The Seventh Circuit stated therefore that "the only change *Neder* precipitated in our circuit was requiring that a separate

wire, and bank fraud, its holding cannot be barred from retroactive application on collateral review under *Teague*. *Ross*, 289 F.3d at 681.

■ The second conclusion that appears necessary to this Court based on *Neder* is that "materiality" is an element of the federal mail fraud, wire fraud and bank fraud offenses not only if the victim is defrauded of money or property, but also if, as under § 1346, the victim is defrauded of an intangible right to honest services. The Supreme Court held in *Neder* that when Congress used the term "defraud" in §§ 1341, 1343 and 1344, without expressly disavowing that term's common-law meaning, Congress implicitly incorporated the common-law element of materiality into those statutory fraud offenses. In § 1346, Congress legislatively modified this same term "defraud" stating, "[f]or purposes of this chapter [which chapter contains §§ 1341, 1343 and 1344], the term 'scheme or artifice to defraud' includes a scheme or artifice to defraud another of the intangible right of honest services." 18 U.S.C. § 1346. The meaning of the phrase "scheme or artifice to defraud" in §§ 1341, 1343 and 1344 has therefore been clarified both by § 1346, legislatively, and by *Neder*, judicially. The phrase includes schemes to defraud another of an intangible right of honest services *and* must involve either a material false representation of fact or a failure to disclose material information by one who has a duty to disclose it.

The Eleventh Circuit recently recognized that *Neder* applied to § 1346 offenses in *United States v. deVegter*, 198 F.3d at 1328 n. 4. There, in a post-*Neder* case involving private-sector, honest-services wire fraud, the Eleventh Circuit stated the following:

> The Elements of a § 1343 wire fraud offense are that the defendant (1) intentionally participated in a scheme to defraud; and (2) used wire communications to further that scheme. In addition, the Supreme Court recently held that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." [Citing *Neder*]. Finally, of course, the Government must identify of what the victim has been defrauded—for example, money, property, or the § 1346 intangible right of honest services.

*deVegter*, 198 F.3d at 1328 n. 4 (internal citations omitted).[8] Thus, contrary to the Magistrate's ruling, the Eleventh Circuit has acknowledged that, under *Neder*, materiality of falsehood is an element of honest services fraud under § 1346.[9]

---

instruction on materiality be given to juries." *See id.* In contrast, while some Eleventh Circuit decisions that pre-date the Eleventh Circuit's decision in *Neder*, 136 F.3d 1459, had addressed materiality in fraud cases—*see, e.g., Waymer*, 55 F.3d at 571—the Supreme Court's decision in *Neder* reversed the Eleventh Circuit's decision directly on the substantive materiality issue and therefore clearly changed our circuit's substantive law of mail, wire and bank fraud in this respect.

8. In the Eleventh Circuit, "[e]xcept for the jurisdictional nexus (mails in § 1341, interstate wires in § 1343) the statutes are the same, are interpreted identically, and cases decided under one are controlling under the other." *deVegter*, 198 F.3d at 1328 n. 1 (cit-

ing *Belt v. United States*, 868 F.2d 1208, 1211 (11th Cir.1989)).

9. Citing *United States v. Paradies*, 98 F.3d 1266, 1282 (11th Cir.1996), *cert. denied*, 522 U.S. 1014, 118 S.Ct. 598, 139 L.Ed.2d 487 (1997), the Magistrate ruled that *Neder* was inapplicable to schemes to defraud another of an intangible right to honest services, *i.e.*, that materiality of falsehood was not an element of honest services fraud under §§ 1341 and 1346, "since a defendant charged with this offense is actively participating in the payment of bribes or kickbacks to a public official." March 23, 2000 R & R at 5 (citing *Paradies*, 98 F.3d at 1282). This Court expressly rejects this portion of the R & R.

This understanding also comports with some pre-*Neder* Eleventh Circuit decisions, such as *Waymer*, and *United States v. Paradies*, 98 F.3d 1266, 1282 (11th Cir.1996)(citing *Waymer* ), *cert. denied*, 522 U.S. 1014, 118 S.Ct. 598, 139 L.Ed.2d 487 (1997). The defendant in *Waymer*, a member of the Atlanta Board of Education, challenged his convictions under §§ 1341 and 1346 on the basis of materiality, that is, he argued that the fact that he received kickbacks did not constitute material information that his fiduciary duties obliged him to disclose. *Waymer*, 55 F.3d at 572. Rejecting this argument the Eleventh Circuit stated the following:

> A defendant's breach of fiduciary duty may be a predicate for a violation of the mail fraud statute where the breach entails the violation of a duty to disclose material information. In other words, fraud, for purposes of a mail fraud conviction, may be proved through the defendant's non-action or non-disclosure of material facts intended to create a false

or fraudulent representation ... [W]e find no merit in Waymer's contention that as a fiduciary to the citizens of Atlanta, he had not duty to disclose the fact that he was receiving fifteen percent of what the school board was paying [a contractor] ostensibly for pest control and other services.

*Waymer*, 55 F.3d at 571–72 (internal citations and quotation marks omitted). Considering pre-*Neder* Eleventh Circuit decisions like *Waymer* and *Paradies*, the import of the Supreme Court's decision in *Neder*, and the Eleventh Circuit's post-*Neder* pronouncement in de*Vegter*, it is clear that materiality is an element of federal fraud offenses involving schemes to defraud another of the intangible right of honest services under § 1346. It was therefore error for this Court not to instruct the jury on the element of materiality at Movant's trial. Pursuant to the Supreme Court's mandate in *Neder*, this Court must analyze whether its error was harmless.

*Paradies* does not stand for such a proposition. The defendants in *Paradies* were convicted in a scheme to defraud the City of Atlanta of the honest services of Ira Jackson, an Atlanta City Council member and Commissioner of Aviation, under §§ 1341, 1346 and 2. The defendant's paid bribes to Jackson in exchange for his influence. On direct appeal, the defendants argued, *inter alia*, that their convictions ought to be reversed because, unlike Jackson, they owed no independent fiduciary duty to the City of Atlanta. *See Paradies*, 98 F.3d at 1281–82. The Eleventh Circuit rejected this argument, citing *Waymer*, in the following passage, which the Magistrate relied upon in the R & R:

> "a defendant's breach of a fiduciary duty *may be* a predicate for a violation of the mail fraud statute where the breach entails the violation of a duty to disclose material information." That predicate is inapplicable to the facts of this case, however, because the Paradies defendants were not charged with a failure to disclose a material fact; they were charged with aiding and abetting by *actively participating* in the

crime. Jackson certainly had a fiduciary duty to the city.

*Paradies*, 98 F.3d at 1282 (quoting *Waymer*, 55 F.3d at 568) (emphasis in *Paradies* ). The Magistrate misinterpreted this passage. The predicate found by the Eleventh Circuit in *Paradies* to be inapplicable in that case was the existence of an independent fiduciary duty between the defendants convicted under 18 U.S.C. § 2(b) as aiders and abetters, on the one hand, and the City of Atlanta, on the other; the inapplicable predicate was not that the information the fiduciary failed to disclose must be material. The court in *Paradies* was merely affirming that a person, like Movant, is subject to criminal liability as a principal under 18 U.S.C. § 2(b) for participating in an honest services mail fraud offense by causing the mails to be used and bribing an official with a fiduciary duty to the public. Rather than rejecting materiality as an element of the federal honest-services fraud offenses, *Paradies*, like *Waymer*, was a pre-*Neder*, Eleventh Circuit decision that did acknowledge materiality to be an element of those offenses.

In *Ross*, 289 F.3d at 682, the Eleventh Circuit addressed precisely which harmless-error standard of review applies in a collateral proceeding addressing a substantive instructional error in a federal trial. *See id.* The Eleventh Circuit ruled that the applicable standard was articulated by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619, 636–38, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993). *See id.* "When reviewing the harmlessness of an error under the *Brecht* standard, if, when all is said and done, the court's conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." *Ross*, 289 F.3d at 683 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995)) (citation and internal quotation marks omitted). "But if a federal court is in grave doubt about whether the trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *See id.* (citation and internal quotation marks omitted).

■ Under this standard, this Court holds that its error in not instructing the jury on materiality was harmless. Movant argues that the error was harmful because, given the high quality of the legal services he provided defendants in SAPD appointments, Gelber's failure to disclose that he appointed Movant in exchange for bribes and kickbacks cannot be deemed a material omission. *See* Movant's Mem. II at 6–7. Movant argues that because he was "a bilingual, hardworking attorney, who graduated from Columbia College and the University of Pennsylvania Law School" and a former assistant public defender, and that he submitted accurate billing statements, the State of Florida received "the best and most for its buck" when Gelber appointed him to cases. *See id.*

Even if Movant's statements were taken to be true, his argument would be meritless. The Eleventh Circuit made clear in *Lopez–Lukis* that "Sections 1341 and 1346 do not address the wisdom or results of [an official's] decision; rather, they concern the manner in which officials make their decisions." *See Lopez–Lukis*, 102 F.3d at 1169 n. 13. Even if Movant were a contemporary incarnation of Cicero, who worked on SAPD appointments pro bono, it would be irrelevant for purposes of his criminal liability under § 1341 and 1346. The evidence at trial established that Movant agreed to kick twenty percent of his SAPD earnings back to Gelber in exchange for appointments. Movant earned over $77,000 dollars from his bribery/kickback-procured representations; Gelber in turn earned between $10,000 and $12,000. The suggestion that Gelber's failure to disclose this was an immaterial breach of his inherent fiduciary duties to the State of Florida because he was appointing a good lawyer in exchange for the kickbacks is absurd on its face.

Movant was a member of the bar who bribed and paid kickbacks to a judge: no small matter. Fraudulent schemes such as that perpetrated by Movant and Gelber are a blight on the legal system. Such schemes corrode the public's faith and confidence in the judiciary and in turn foster the festering cynicism that pervades public discourse about the integrity of the nation's governmental institutions. Movant's crimes were not somehow victimless because, on his telling, he provided his bribery-procured clients with good legal representation. Public corruption, by its very nature, victimizes the entire community living in its midst. Gelber's failure to disclose his scheme with Movant was a material breach of his inherent fiduciary duties to the State of Florida. The Court has no doubt whatsoever that, had it given the

jury an instruction on materiality, the jury would have nevertheless convicted Movant.

## IV. Conclusion.

For the reasons stated herein, Movant's third and fourth amended motions to vacate, set aside or correct his conviction and sentence are **DENIED**. The Court accepts the Magistrate's recommendation in the R & R, but rejects those portions of the R & R that are inconsistent with this Order.